2008 UT App 58

**Gina M. ARNOLD and Charlie S. Arnold, Plaintiffs and Appellants,**

v.

**David GRIGSBY, M.D.; Gary B. White, M.D.; and Uintah Basin Medical Center, Defendants and Appellee.**

No. 20060481–CA.

Court of Appeals of Utah.

Feb. 28, 2008.

Roger P. Christensen and Karra J. Porter, Salt Lake City, for Appellants.

Larry R. White and Paul D. Van Komen, Salt Lake City, for Appellee.

Before Judges BILLINGS, DAVIS, and ORME.

## OPINION

ORME, Judge:

¶ 1 Gina M. Arnold and Charlie S. Arnold appeal the trial court's summary judgment order in favor of David Grigsby, M.D., which concluded that the Arnolds' claims were time-barred by the Utah Health Care Malpractice Act's two-year statute of limitations. *See* Utah Code Ann. § 78–14–4(1) (2002). By reason of the generally applicable tolling statute, which suspends the running of a statute of limitations when a defendant departs from Utah after a cause of action has accrued against him, *see id.* § 78–12–35, we reverse.

## BACKGROUND [1]

¶ 2 On July 22, 1999, Dr. Gary White performed a colonoscopy and polypectomy on Gina Arnold, in the course of which he negligently perforated her colon. The next day, Gina began experiencing pain in her lower abdomen and sought treatment at the Uintah Basin Medical Center's emergency room. Dr. White determined that her colon appeared to be perforated and admitted her to the hospital, prescribing triple antibiotics. She remained in the hospital for four days, during which time her condition began to improve. Her discharge plan called for her to continue taking one antibiotic tablet orally and to return to the emergency room to receive two additional antibiotics during the next three days.

¶ 3 Gina's condition worsened, however, and on August 3, 1999, she was again admitted to the hospital where Dr. White performed an exploratory laparoscopic surgery. At some point during the course of the surgery, Dr. David Grigsby entered the operating room and began to participate in the procedure. Dr. White's operative report indicates that he was the surgeon while Dr. Grigsby assisted him. Gina later had two more laparoscopic surgeries at the Uintah Basin Medical Center, one performed by Dr. White on August 5, 1999, and another performed by Dr. Grigsby on August 11, 1999. After the August 11 surgery, she was transferred to St. Mark's Hospital in Salt Lake City.

¶ 4 The Arnolds filed a complaint on December 4, 2001, naming Dr. White, the Uintah Basin Medical Center, and Dr. Grigsby as defendants. The Arnolds did not, however, serve Dr. Grigsby with a summons and complaint at that time. They maintain that, while they knew Dr. Grigsby had some level of participation in at least some of the surgeries, they did not originally serve him with the complaint or a pre-suit notice of intent to commence an action because they did not want to bring him into the litigation unless they found evidence requiring them to do so.

At the time they filed their complaint, they claim they were under the impression from the medical records that Dr. White was Gina's primary care provider during the events in question, directed her course of treatment, and was primarily responsible for any negligence that caused her injury.

¶ 5 But when Dr. White was deposed on October 29, 2003, he made several statements that contradicted the medical records. He asserted that when Dr. Grigsby entered the operating room during the August 3 surgery, the surgery became Dr. Grigsby's case and Dr. Grigsby became Gina's primary doctor. Because Dr. Grigsby was in charge, Dr. White said he deferred to Dr. Grigsby's judgment. Dr. White stated that he felt Gina needed more vigorous treatment during the August 3 surgery. He thought that trying to locate a hole and "oversew[ing] the hole," if there was one, was the best way to proceed. According to Dr. White, however, Dr. Grigsby decided that just draining and washing out the abdomen was the best course of action. Dr. White further claimed that when he performed the August 5 surgery, he proceeded according to Dr. Grigsby's instructions, even though he would have performed the surgery differently. He asserted that he would have tried, at that point, to close up the hole in her colon and perform a colostomy, if necessary.

¶ 6 After Dr. White's deposition, the Arnolds obtained a dismissal without prejudice as to Dr. Grigsby. They then filed a notice of intent to commence an action, filed an amended complaint on August 6, 2004, and served Dr. Grigsby in Tennessee, where he then lived. Dr. Grigsby moved for summary judgment on September 22, 2005, arguing that the Arnolds' claims were barred by the Utah Health Care Malpractice Act's statute of limitations. *See* Utah Code Ann. § 78–14–4(1) (2002). The Arnolds opposed the motion, claiming that the statute of limitations period was tolled when Dr. Grigsby moved to

---

1. " '[I]n reviewing a grant of summary judgment, we analyze the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.' " *DOIT, Inc. v.* *Touche, Ross & Co.*, 926 P.2d 835, 841 (Utah 1996) (citation omitted) (alteration in original). We recite the facts accordingly.

Tennessee in July 2000, *see id.* § 78–12–35,[2] and that the complaint therefore was timely filed. They additionally argued that, regardless of the tolling statute, they timely filed their complaint within two years of the date they learned that Dr. Grigsby played a more integral role in Gina's healthcare than they had previously known.

¶ 7 The trial court first determined that the statute of limitations began running in November 1999 because the "[Arnolds] discovered the alleged injury no later than November 1999" and because "[a]t that time, [they] certainly suspected the alleged injury may have been caused by negligence." The trial court reached this determination because "[Gina] Arnold consult[ed] an attorney and initiat[ed] a formal investigation in her potential medical malpractice claim as early as September 1999" and because the Arnolds knew or should have known that Dr. Grigsby had been involved in Gina's healthcare at the time they discovered her injury. Accordingly, the trial court determined that the December 4, 2001, complaint was not filed within the two-year statutory period.

¶ 8 In reaching its decision, the trial court determined that the tolling statute, section 78–12–35, did not apply. *See* Utah Code Ann. § 78–12–35 (2002). Rejecting Dr. Grigsby's argument that the tolling statute simply did not apply to medical malpractice cases, the trial court nevertheless determined that because Dr. Grigsby could have been served in accordance with Utah's long-arm statute, *see id.* §§ 78–27–24 to –25, the tolling statute did not work to suspend the running of the Malpractice Act's two-year limitations period, even though Dr. Grigsby was a nonresident and absent from the state. Consequently, it granted Dr. Grigsby's sum-

mary judgment motion. The Arnolds now appeal that ruling.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 The Arnolds claim that the trial court erred in granting summary judgment to Dr. Grigsby on the theory that section 78–12–35 did not toll the running of the statute of limitations even though Dr. Grigsby had moved from Utah.[3] " 'Summary judgment is appropriate when there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law.' " *Emergency Physicians Integrated Care v. Salt Lake County*, 2007 UT 72, ¶ 8, 167 P.3d 1080 (quoting *Dairyland Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 882 P.2d 1143, 1144 (Utah 1994)). "When reviewing a ruling on summary judgment, this court gives no deference to the lower court's legal conclusions and reviews the issues presented under a correctness standard." *Id.* "[W]e analyze the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *DOIT, Inc. v. Touche, Ross & Co.*, 926 P.2d 835, 841 (Utah 1996) (citation and internal quotation marks omitted).

¶ 10 In addressing the Arnolds' argument, the first issue is whether the trial court properly concluded that section 78–12–35, the tolling statute, *see* Utah Code Ann. § 78–12–35 (2002), applies to medical malpractice cases, given the statute of limitations provision of the Utah Health Care Malpractice Act, *see id.* § 78–14–4(2). The second issue is whether the trial court correctly determined that the tolling statute is inapplicable where a nonresident is subject to the jurisdiction of Utah's courts and is amenable to service of process under Utah's long-arm statute, *see id.* §§ 78–27–24 to –25. As both the application of a statute of limitations and

---

**2.** Section 78–12–35 provides:
> Where a cause of action accrues against a person when he is out of the state, the action may be commenced within the term as limited by this chapter after his return to the state. If after a cause of action accrues he departs from the state, the time of his absence is not part of the time limited for the commencement of the action.

Utah Code Ann. § 78–12–35 (2002).

**3.** The Arnolds also argue that even without the tolling statute, they timely filed their lawsuit

against Dr. Grigsby because the statute of limitations in medical malpractice actions does not begin to run until the injured party becomes aware of his or her injury *and* aware that a particular doctor's negligence caused that injury, not just that any doctor's negligence or that some negligent act caused the injury. In light of our reversal of the trial court's determination that section 78–12–35 did not apply, we need not reach this argument.

the interpretation of statutory provisions present questions of law, we review the lower court's determinations on these issues for correctness. *See Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 18, 108 P.3d 741 (" 'The applicability of a statute of limitations ... [is a] question[ ] of law, which we review for correctness.' ") (quoting *Spears v. Warr*, 2002 UT 24, ¶ 32, 44 P.3d 742); *Sill v. Hart*, 2007 UT 45, ¶ 5, 162 P.3d 1099 ("This case presents an issue of statutory interpretation, a question of law that we review for correctness.").

## ANALYSIS

### I. Interplay of Malpractice Act and Tolling Statute

■ ¶ 11 Dr. Grigsby argues that "[t]he express statutory language [of section 78–14–4(2) ] ... clearly demonstrates the intent that the [Malpractice] Act be exempted from other tolling statutes." We disagree.

■ ¶ 12 When interpreting a statute, we "construe[ it] as a comprehensive whole." *Beaver County v. Utah State Tax Comm'n*, 916 P.2d 344, 358 (Utah 1996) (citation and internal quotation marks omitted).

> [O]ur primary goal is to give effect to the legislature's intent in light of the purpose the statute was meant to achieve. The best evidence of the true intent and purpose of the legislature in enacting a statute is the plain language of the statute. We therefore look first to the statute's plain language.

*Lieber v. ITT Hartford Ins. Ctr., Inc.*, 2000 UT 90, ¶ 7, 15 P.3d 1030 (citations and internal quotation marks omitted). "In so doing, [w]e presume that the legislature used each word advisedly and give effect to each term according to its ordinary and accepted meaning." *Arredondo v. Avis Rent A Car Sys.,*

*Inc.*, 2001 UT 29, ¶ 12, 24 P.3d 928 (citation and internal quotation marks omitted) (alteration in original). However, "[w]e will avoid an interpretation which renders portions of, or words in, a statute superfluous or inoperative." *Platts v. Parents Helping Parents*, 947 P.2d 658, 662 (Utah 1997).

■ ¶ 13 Utah Code section 78–14–4(2) provides in relevant part:

> The provisions of this section [detailing when a patient must file a malpractice action] shall apply to all persons, *regardless of minority or other legal disability under Section 78–12–36 or any other provision of the law* . . . .

Utah Code Ann. § 78–14–4(2) (2002) (emphasis added). According to Dr. Grigsby, the language "regardless of ... any other provision of the law" means that the Legislature intended to exempt medical malpractice actions from the effect of all other statutory provisions that could conceivably toll the statute of limitations. In support of this interpretation, he discusses *Griffiths–Rast v. Sulzer Spine Tech, Inc.*, No. 2:02CV1267, 2005 WL 2237635 (D.Utah Sept. 14, 2005) (mem.), *aff'd*, 216 F. App'x 790, 792 (10th Cir.2007) (mem.), a federal court decision that concluded section 78–14–4(2) "provides an explicit exception to section 78–12–35." [4] *Id.* at *3. The Arnolds, on the other hand, argue that, as the trial court in the instant case determined, "the phrase 'or any other provision of [the] law' relates to minors and others with legal disabilities, rather than constituting a free standing clause." We agree with the Arnolds and the trial court.

¶ 14 In its summary judgment order, the trial court determined that section 78–14–4(2) did not exempt medical malpractice actions from the reach of the tolling statute. It astutely analyzed the issue as follows:

---

4. Of course, we are not bound by any federal court's interpretation of a Utah statute, although such cases can surely be persuasive. Moreover, the federal district court based its interpretation that section 78–14–4(2) explicitly precluded application of section 78–12–35 on the "all persons" language, without due regard to the phrase immediately following it. *See Griffiths–Rast v. Sulzer Spine Tech, Inc.*, No. 2:02CV1267, 2005 WL 2237635, at *3 (D.Utah Sept. 14, 2005) (mem.), *aff'd*, 216 F. App'x 790, 793 (10th Cir.

2007) (mem.). And the phrase that follows the "all persons" language relied on by the federal courts is what explains the rationale for such a provision: But for the Legislature's desire to make its point about the irrelevancy of "minority or other legal disability," there would be no reason to include such a provision at all. That Utah law applies to "all persons" goes without saying by reason of the Uniform Operation Clause of the Utah Constitution. *See* Utah Const. art. I, § 24.

[I]t is clear to the Court that the language "or any other provision of the law" refers only to other provisions of the law which define "legal disability." This reading is supported by the fact that this language is contained within a dependent clause which refers back to, and clarifies the meaning of, the term "all persons." The clause "regardless of minority or other legal disability under Section 78–12–36 or any other provision of [the] law" is contained within a single set of commas, indicating to this Court that the legislature intended the clause to refer to party status, rather than to removing this provision from the scope of all other provisions of law. Therefore, the Court rejects Defendant's argument on this point.

We agree with this structural interpretation of the provision and conclude that the phrase "or any other provision of the law" only refers to other provisions of law relating to "minority or other legal disabilit[ies]" that might otherwise affect the limitations period. Tolling statutes that suspend the running of statute of limitation periods for other reasons—like section 78–12–35—still apply.

¶ 15 We additionally note that, as the Arnolds contend, the legislative history supports our interpretation of section 78–14–4(2). Section 78–14–4(2) as originally enacted provided in relevant part:

> The provisions of this section shall apply to all persons regardless of minority or other legal disability. . . .

Utah Health Care Malpractice Act, ch. 23, § 4, 1976 Utah Laws 90, 94 (codified at Utah Code Ann. § 78–14–4(2) (1977)). In 1979, the Legislature amended this provision in response to *Scott v. School Board*, 568 P.2d 746 (Utah 1977), *see Blum v. Stone*, 752 P.2d 898, 900 (Utah 1988), and added the clause "under Section 78–12–36 or any other provision of the law." Malpractice Statute of Limitations Act, ch. 128, § 1, 1979 Utah Laws 739, 740 (codified at Utah Code Ann. § 78–14–4(2) (Supp.1979)) (current version at Utah Code Ann. § 78–14–4(2) (2002)).

¶ 16 To more fully explain, section 78–12–36 tolls the running of a statute of limitation, unless the case involves "recovery of real property," for a person who "at the time the cause of action accrued, [was] either under the age of majority or mentally incompetent and without a legal guardian" throughout the period of such person's legal disability. *See* Utah Code Ann. § 78–12–36 (2002). In *Scott*, a minor failed to timely comply with the notice requirements of the Governmental Immunity Act, and the trial court granted the school district's motion for summary judgment. *See* 568 P.2d at 746. The Utah Supreme Court held that "a minor claimant is justly entitled to the protection afforded by said Section 78–12–36(1) . . . in all cases, including notice requirements of the type contained in the Utah Governmental Immunity Act." *Id.* at 748. In making this ruling, the Supreme Court recognized that its conclusion was contrary to the rationale adopted in other Utah decisions, *see id.*, which held that "specific statutes of limitation take precedence over the general provisions of title 78, U.C.A., 1953, and that the specific requirement of notice takes further precedence at least as it may affect minors in the care of natural guardians," *id.* at 747.

¶ 17 After the *Scott* decision, the Legislature, during floor discussions, indicated that it was amending "section 78–14–4[ (2) ] in order to overturn a Supreme Court decision," the *Scott* opinion. *Blum*, 752 P.2d at 900 n. 2 (quoting Transcript of Discussion and Vote in Utah House of Representatives at Third Reading of H.B. 164 (Feb. 13, 1979)). As the Supreme Court noted in *Blum*, both it and the Legislature "agreed that *Scott* at least had the effect of tolling all statutes of limitations during minority based upon section 78–12–36, absent clear legislative intent to the contrary." *Id.* The Supreme Court also concluded that "[t]he amendment evinced the legislature's determination to apply the medical malpractice statute of limitations to all plaintiffs' claims, including those of minors," and that it "was adopted with a view to defeating the effect of the tolling provisions of section 78–12–36." *Id.* at 900.

¶ 18 We conclude that this history shows that the Legislature clearly intended to exempt minors and persons with other legal disabilities from the reach of section 78–12–36 or other provisions that might toll the medical malpractice statute of limitations by

reason of such disability. In light of this specific provision enacted in response to case law, we must presume that if the Legislature intended section 78–14–4(1) to also be beyond the reach of all other tolling statutes, including those unrelated to "minority or other legal disability," Utah Code Ann. § 78–14–4(2) (2002), it would have explicitly said so. *See Carrier v. Salt Lake County,* 2004 UT 98, ¶ 30, 104 P.3d 1208 ("When examining the plain language, we must assume that each term included in the ordinance was · used advisedly. Additionally, 'statutory construction presumes that the expression of one should be interpreted as the exclusion of another.' Thus, we should give effect to any omission in the ordinance language by presuming that the omission is purposeful.") (citations omitted).

¶ 19 Dr. Grigsby further argues that interpreting section 78–14–4(2) as not preventing the application of section 78–12–35 to medical malpractice actions is contrary to the declared purpose of the Malpractice Act, as set forth in Utah Code section 78–14–2. *See* Utah Code Ann. § 78–14–2 (2002). That section declares:

> In enacting this act, it is the purpose of the legislature to provide a reasonable time in which actions may be commenced against health care providers while limiting that time to a specific period for which professional liability insurance premiums can be reasonably and accurately calculated; and to provide other procedural changes to expedite early evaluation and settlement of claims.

*Id.* We conclude, however, that our interpretation of section 78–14–4(2) is not contrary to the purpose of the act, as it still substantially limits the statute of limitations period for malpractice actions and still provides the needed predictability for insurance companies in the vast majority of cases. Moreover, our interpretation should not cause malpractice insurance rates to increase and will not deter healthcare providers from leaving Utah. As the Arnolds argue, and as indicated in section II of this opinion, all medical providers need do to make sure the statute of limitations is not tolled if they leave Utah is appoint an agent within Utah to receive service of process for them. Finally, contrary to Dr. Grigsby's assertion, this interpretation does not render the words "other provision of the law" "superfluous or inoperative." The phrase simply refers back to "minority or other legal disability," and meaningfully makes clear that *legal disability* under any other provision of law will likewise not toll the running of the malpractice statute of limitations.

## II. Interplay of Long–Arm Statute and Tolling Statute

¶ 20 While rejecting Dr. Grigsby's interpretation of section 78–14–4(2), the trial court nonetheless determined that the tolling provision of section 78–12–35 did not apply in this case because, under Utah's long-arm statute, Dr. Grigsby was subject to Utah's jurisdiction and amenable to service of process in the state where he resided. The trial court relied on *Snyder v. Clune,* 15 Utah 2d 254, 390 P.2d 915 (1964), *Van Tassell v. Shaffer,* 742 P.2d 111 (Utah Ct.App.1987), and *Ankers v. Rodman,* 995 F.Supp. 1329 (D.Utah 1997), and reasoned that, because the Arnolds could serve Dr. Grigsby in Tennessee, "the purpose of the tolling statute . . . 'to prevent a defendant from depriving a plaintiff of the opportunity of suing him by absenting himself from the state during the period of limitation'" was not furthered. While there is a certain logic to the trial court's analysis, we conclude that the trial court erred in making this determination, as the issue was recently put squarely before the Utah Supreme Court, which reached the opposite conclusion.

¶ 21 In *Olseth v. Larson,* 2007 UT 29, 158 P.3d 532, the Utah Supreme Court answered a certified question of state law from the United States Court of Appeals for the Tenth Circuit. *See id.* ¶ 1. The question was whether

> the statute of limitations tolled under Utah Code Ann. § 78–12–35 when a person against whom a claim has accrued has left the state of Utah and has no agent within the state of Utah upon whom service of process can be made instead, but the person is amenable to service pursuant to

Utah's long-arm statute, Utah Code Ann. § 78–27–24[.]

*Id.* (internal quotation marks omitted).

¶ 22 The appellee in *Olseth* argued that "when the purpose of the tolling statute conflicts with its literal meaning, the purpose must be given effect." *Id.* ¶ 20. Accordingly, he claimed that "the tolling statute should no longer apply because the need to delay the running of the statute of limitations ceases to exist" when "the long-arm statute ... brings a defendant within the personal jurisdiction of the court." *Id.* After considering the creation and history of section 78–12–35, the plain language of the statute, prior judicial decisions that have interpreted the statute, and the deference owed to the Legislature, *see id.* ¶ 14, the Supreme Court

> h[e]ld that Utah Code section 78–12–35 *does toll* the applicable statute of limitations when a person against whom a claim has accrued has left the state of Utah and has no agent within the state upon whom service of process can be made, even where the person was at all times amenable to service pursuant to Utah's long-arm statute.

*Id.* ¶ 40 (emphasis in original). The Supreme Court also indicated that prior Utah judicial decisions show that when a case does not fall within the Nonresident Motor Vehicle Act,[5] an appellate court should "apply a straightforward application of the tolling statute to [the] claim." *Id.* ¶ 36.

¶ 23 The Arnolds claim that Dr. Grigsby left the state of Utah during July 2000; no longer maintained a residence in Utah at which substitute service could be effected, *see* Utah R. Civ. P. 4(d)(1)(A); *but see Olseth,* 2007 UT 29, ¶¶ 27–29, 33–34, 36, 158 P.3d 532 (discussing *Keith–O'Brien Co. v. Snyder,* 51 Utah 227, 169 P. 954 (1917)); and never appointed an agent to receive service of process for him in Utah. Dr. Grigsby does not

challenge these assertions. Accordingly, under *Olseth,* when Dr. Grigsby left Utah in July 2000 and did not appoint an agent within Utah, the statute of limitations was tolled, preventing the time of his absence from Utah from being calculated in the limitations period. *See* Utah Code Ann. § 78–12–35 (2002). Thus, even if the statute of limitations began to run in November 1999, the limitations period stopped running approximately eight months later. Accordingly, the complaint was timely filed in December 2001.

## CONCLUSION

¶ 24 While the trial court correctly determined that the tolling statute, section 78–12–35, applies to medical malpractice claims otherwise governed by the Malpractice Act, it erred in determining that the tolling statute does not apply to Dr. Grigsby because he was amenable to service of process under Utah's long-arm statute. Under *Olseth,* the tolling statute suspends the running of the statute of limitations during the time a defendant is absent from the state if he has not appointed a Utah agent to receive service of process. This is true even if the defendant is subject to Utah's jurisdiction and amenable to service of process under Utah's long-arm statute. Accordingly, we reverse the trial court's summary judgment and remand for such further proceedings as are now appropriate.

¶ 25 WE CONCUR: JUDITH M. BILLINGS, Judge, and JAMES Z. DAVIS, Judge.

---

5. "[T]he Nonresident Motor Vehicle Act ... authorizes substitute service of process on a nonresident motorist by serving the Division of Corporations and Commercial Code." *Olseth v. Larson,* 2007 UT 29, ¶ 29, 158 P.3d 532. *See* Utah Code Ann. § 41–12a–505 (Supp.2007). Accordingly, the Utah Supreme Court has held

that "a nonresident motorist's absence from the state d[oes] not toll the statute of limitations [because] by statute an agent is appointed within the state to receive service of process on behalf of nonresident motorists." *Olseth,* 2007 UT 29, ¶ 29, 158 P.3d 532 (emphasis omitted).