2010 UT App 226

**Gina M. ARNOLD and Charlie S. Arnold, Plaintiffs and Appellants,**

v.

**David GRIGSBY, M.D.; et al., Defendant and Appellee.**

No. 20060481–CA.

Court of Appeals of Utah.

Aug. 26, 2010.

OPINION

ORME, Judge:

¶1 Plaintiffs Gina M. and Charlie S. Arnold appeal the trial court's summary judgment order in favor of defendant David Grigsby, M.D., which determined that, pursuant to the generally applicable tolling statute, *see* Utah Code Ann. § 78–12–35 (2002),[1] the statute of limitations was not tolled by Dr. Grigsby's departure from the state of Utah and that the Arnolds' claims were time-barred by the two-year statute of limitations contained in the Utah Health Care Malpractice Act (the Malpractice Act), *see id.* § 78–14–4(1).[2] We previously reversed the trial court's order, concluding that Dr. Grigsby's absence from the state did in fact toll the applicable statute of limitations. *See Arnold v. Grigsby (Arnold I)*, 2008 UT App 58, ¶24, 180 P.3d 188. However, the Utah Supreme Court granted certiorari; concluded that the tolling provision at issue, *see* Utah Code Ann. § 78–12–35, was inapplicable to the Arnolds' medical malpractice action; and remanded to us to consider whether the Arnolds' complaint was timely under the Malpractice Act's statute of limitations. *See Arnold v. Grigsby (Arnold II)*, 2009 UT 88, ¶¶5, 25, 225 P.3d 192. We again reverse and remand for trial.

## BACKGROUND [3]

¶2 On July 22, 1999, Dr. Gary White performed a colonoscopy on Gina Arnold at Uintah Basin Medical Center (UBMC). The next day, Gina began experiencing pain in her lower abdomen and sought treatment at UBMC's emergency room. Dr. White determined that Gina's colon was perforated, admitted her to the hospital, and prescribed treatment with antibiotics. Gina remained hospitalized for four days, after which Dr.

Roger P. Christensen and Karra J. Porter, Salt Lake City, for Appellants.

Larry R. White and Paul D. Van Komen, Salt Lake City, for Appellee.

Before Judges DAVIS, ORME, and VOROS.

1. The Legislature reorganized Title 78 of the Utah Code in 2008, resulting in the renumbering of this section to 78B–2–104. *See* Utah Code Ann. § 78B–2–104 amend. notes (2008). For consistency with the previous decisions in this case, we cite to the prior version of the statute.

2. This section was renumbered in 2008 as section 78B–3–404. *See* Utah Code Ann. § 78B–3–404 amend. notes (2008). Again, for consistency with the earlier decisions in this case, we cite to the prior version of this statute.

3. We recite the facts pertinent to the Arnolds' remaining issue on appeal in the light most favorable to the Arnolds. *See DOIT, Inc. v. Touche, Ross & Co.*, 926 P.2d 835, 841 (Utah 1996) ("[I]n reviewing a grant of summary judgment, we analyze the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.") (alteration in original) (citation and internal quotation marks omitted).

White discharged her, instructing her to continue taking oral antibiotics and to return to the UBMC emergency room to receive intravenous antibiotics until Dr. White could see her again three days later.

¶ 3 Despite the antibiotic treatment, Gina's condition worsened, and on August 3, 1999, she was readmitted to UBMC, where Dr. White performed exploratory laparoscopic surgery. After Dr. White had commenced the surgery, Dr. David Grigsby entered the operating room and participated in the procedure. Dr. White's operative report indicated that he was the surgeon and that Dr. Grigsby assisted him.

¶ 4 In the week that followed, Gina had two more laparoscopic surgeries at UBMC, one performed by Dr. White on August 5, 1999, and another performed by Dr. Grigsby on August 11, 1999.[4] A day or two after the final laparoscopy, while discussing the possibility of Gina being transferred to the care of another physician or hospital, Dr. White asked Charlie Arnold: "Have you lost faith in me? You don't trust me?" The answer to those questions was apparently in the affirmative, and on August 16, 1999, Gina was transferred to St. Mark's Hospital in Salt Lake City for further treatment.

¶ 5 In September 1999, because Gina "just knew something hadn't happened right" with her treatment at UBMC, the Arnolds retained legal counsel. On November 16, 1999, the Arnolds' counsel sent UBMC a letter requesting Gina's medical records and stating that he represented Gina "relative to treatment she received following complications arising from an initial diagnosis and treatment of her for an intestinal condition by Dr. Gary White." The letter also stated that counsel was "still in the investigatory stage of our representation," investigating "the possibility of claims that may be filed in relation to her initial diagnosis and/or treatment." Eight months later, in July 2000, Dr.

Grigsby departed the state, moving from Roosevelt, Utah, to Oneida, Tennessee.

¶ 6 On December 4, 2001, the Arnolds filed a Complaint and Jury Demand in district court. The complaint listed both Dr. White and Dr. Grigsby as defendants, but Dr. Grigsby was never actually served with the complaint, nor was he included in the prelitigation process.

¶ 7 In October 2003, the Arnolds deposed Dr. White. In his deposition, Dr. White testified that Dr. Grigsby became Gina's primary doctor upon participating in the August 3, 1999, laparoscopic procedure and ultimately was in charge of Gina's care; that Dr. White preferred to convert the August 3, 1999, surgery from a laparoscopic procedure into an open procedure, but Dr. Grigsby decided against it; and that although Dr. Grigsby was not physically present at the August 5, 1999, surgery, Dr. White performed the procedure that Dr. Grigsby directed, instead of a different procedure that Dr. White himself favored. Based in part on the information gleaned in Dr. White's deposition, the Arnolds filed an Amended Complaint and Jury Demand on August 6, 2004, which was served on Dr. Grigsby.

¶ 8 At his deposition in May 2005, Dr. Grigsby disputed much of Dr. White's account as outlined at Dr. White's 2003 deposition, but he acknowledged that he had a number of conversations with the Arnolds in 1999 during the time Gina received treatment at UBMC. And in their depositions in August 2005, the Arnolds testified that while Gina was still at UBMC prior to being transferred to St. Mark's Hospital, they were aware of Dr. Grigsby's participation in Gina's medical treatment.

¶ 9 In September 2005, Dr. Grigsby moved for summary judgment on the ground that the Arnolds' medical malpractice claims were barred by the two-year statute of limitations, which had expired before the December 4,

---

4. The record indicates that Dr. Grigsby did not physically participate in the July 22, 1999, colonoscopy nor the August 5, 1999, laparoscopy. Dr. Grigsby's actual hands-on involvement with treating Gina appears to be limited to the August 3, 1999, laparoscopy, during which he assisted Dr. White, and the August 11, 1999, laparoscopy, which he conducted alone. Additionally, there is

no evidence to suggest that Dr. Grigsby was involved in Gina's treatment during the four-day hospitalization in which she was treated with antibiotics. The July 27 discharge summary recites, without elaboration, that "[i]t was Dr. Grigsby's opinion that the air should have stayed there for three to four days before it finally dissipated."

2001, filing of the complaint. The trial court granted Dr. Grigsby's motion for summary judgment and dismissed the Arnolds' claims against him. The Arnolds appealed.

¶ 10 In 2008, we reversed the trial court's order granting summary judgment in favor of Dr. Grigsby. *See Arnold I*, 2008 UT App 58, ¶ 1, 180 P.3d 188, *rev'd*, 2009 UT 88, 225 P.3d 192. We relied on the "generally applicable tolling statute," *see id.* (citing Utah Code Ann. § 78–12–35 (2002)), "which suspends the running of a statute of limitations when a defendant departs from Utah after a cause of action has accrued against him." *Arnold I*, 2008 UT App 58, ¶ 1, 180 P.3d 188. We stated that the trial court "erred in determining that the tolling statute does not apply to Dr. Grigsby because he was amenable to service of process under Utah's long-arm statute," *id.* ¶ 24, and concluded that

> the tolling statute suspends the running of the statute of limitations during the time a defendant is absent from the state if he has not appointed a Utah agent to receive service of process[,] ... even if the defendant is subject to Utah's jurisdiction and amenable to service of process under Utah's long-arm statute.

*Id.* In response, Dr. Grigsby sought a writ of certiorari, which the Utah Supreme Court granted. *See Arnold v. Grigsby*, 189 P.3d 1276 (Utah 2008).

■ ¶ 11 In 2009, the Supreme Court reversed our decision, "conclud[ing] that the tolling provisions of section 78–12–35 do not apply to the Arnolds' medical malpractice action against Dr. Grigsby." *Arnold II*, 2009 UT 88, ¶ 25, 225 P.3d 192. The Supreme Court remanded the matter to us "for consideration of other issues raised on appeal that may be necessary for proper resolution of the appeal," *id.*, namely the Arnolds' contention that their action against Dr. Grigsby was timely under the Malpractice Act's statute of limitations, *see* Utah Code Ann. § 78–14–4, notwithstanding any applicability of the general tolling statute, *see id.* § 78–12–35. The pivotal issue now before us is whether the trial court erred in ruling, *as a matter of law*, that the two-year statute of limitations had expired at the time the Arnolds brought suit against Dr. Grigsby.

## STANDARD OF REVIEW

¶ 12 Summary judgment may be granted only when there are no genuine issues of material fact and "the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "[I]n reviewing a grant of summary judgment, we analyze the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *DOIT, Inc. v. Touche, Ross & Co.*, 926 P.2d 835, 841 (Utah 1996) (alteration in original) (citation and internal quotation marks omitted). "Because the determination of whether summary judgment is appropriate presents a question of law, we accord no deference to the trial court's decision and instead review it for correctness." *Id.*

## ANALYSIS

■ ¶ 13 "The ... Malpractice Act requires a patient to bring a claim for malpractice no more than two years after the patient discovers or should have discovered the injury." *Daniels v. Gamma West Brachytherapy, LLC*, 2009 UT 66, ¶ 1, 221 P.3d 256. *See* Utah Code Ann. § 78–14–4(1) (2002). In other words, "a patient must discover the legal injury—that is, both the fact of injury and that it resulted from negligence—before the statute of limitations begins to run." *Daniels*, 2009 UT 66, ¶ 1, 221 P.3d 256. The question of when a plaintiff knew or should have known sufficient facts to trigger a statute of limitations presents a "classic factual dispute that should be resolved by the finder of fact." *Sevy v. Security Title Co.*, 902 P.2d 629, 634 (Utah 1995) (citation and internal quotation marks omitted).

¶ 14 At oral argument, both parties argued—and we agree—that the Utah Supreme Court's recent decision in *Daniels v. Gamma West Brachytherapy, LLC*, 2009 UT 66, 221 P.3d 256, is highly instructive in the case before us. In *Daniels*, the trial court regarded the inquiry into when the statute of limitations began to run as a factual one and instructed the jury that the statute of limitations began to run when the plaintiff discovered his medical treatment had been negligent. *See id.* ¶ 18. The jury decided in

favor of the defendants. *See id.* ¶ 19. On appeal, the plaintiff asked the Utah Supreme Court to determine whether, under the Malpractice Act's discovery rule, "the statute of limitations period for his claim was triggered when he discovered that he might have been treated negligently during the course of multiple procedures performed at different times and by different providers, or when he discovered that the specific treatment he received from [the defendants] might have been negligent." *Id.* ¶ 1.

¶ 15 The *Daniels* court concluded "that the trial court's jury instruction misapplied the . . . Malpractice Act and our case law interpreting its discovery requirements." *Id.* ¶ 22. Indeed, the Supreme Court held that the Malpractice Act's "statute of limitations does not begin to run until a patient discovers or should have discovered his legal injury," *id.* ¶ 1, which "includes *discovering the causal event* of the injury," *id.* ¶ 25 (emphasis added). Moreover, the Supreme Court emphasized that "the determination of when a plaintiff is aware of the causal fact turns on a jury's determination of when a plaintiff acting with reasonable diligence discovered or should have discovered *which* event might have caused his injury." *Id.* (emphasis in original). Indeed, the Court observed, "[n]othing in the statute's language or our interpretation of the statute limits the discovery of an injury to merely suspecting negligence without identifying its source." *Id.* ¶ 27.

¶ 16 The *Daniels* court also considered this court's decision in *McDougal v. Weed,* 945 P.2d 175 (Utah Ct.App.1997), in which it was held "that the medical malpractice statute of limitations is tied only to the discovery of the plaintiff's legal injury and not to the discovery of the tortfeasor's identity." *McDougal,* 945 P.2d at 178. *See Daniels,* 2009 UT 66, ¶ 28, 221 P.3d 256. The Supreme Court indicated that in the *Daniels* case, "the identity of [the] specific tortfeasor [was not] at issue, but rather the identification of the medical event that caused the injury." *Daniels,* 2009

UT 66, ¶ 29, 221 P.3d 256. The Supreme Court explained:

> [W]hen a patient has received *multiple medical treatments or undergone numerous medical procedures,* and subsequently suffers unforeseen complications or reactions, he may suspect negligence. *This patient, however, has not discovered his legal injury because,* while he is aware that he is injured, and even if he is aware that negligence may be the source, *he has not sufficiently tied it to its source in a medical procedure.* Therefore, we hold [that] . . . while a patient may not be required to discover the specific individual responsible for his injury, *he must discover the causal event* before the statute of limitations begins to run.

*Id.* (emphases added). "With these concerns in mind, it follows that a patient must not only suspect negligence in a medical treatment, but must also suspect *which treatment in particular* implicates negligent care to avoid pursuing unfounded litigation." *Id.* ¶ 30 (emphasis added).

¶ 17 The statute of limitations begins to run when a patient, exercising "reasonable diligence in investigating a suspected injury . . . should have discovered his injury and its possible negligent cause." *Id.* ¶ 31. "Whether and when a patient should have discovered an injury and its cause is a fact-intensive question that requires a jury to determine, given the information available, whether the actions taken in response to an injury and the efforts extended to discover its cause were adequate."[5] *Id. See Sevy,* 902 P.2d at 634.

¶ 18 Initially, we note that much of the Arnolds' argument on appeal focused, for statute of limitations purposes, on the point in time when the Arnolds knew of Dr. Grigsby's involvement in the alleged negligence. Under *Daniels,* however, the relevant date is not when the Arnolds learned the extent of Dr. Grigsby's general involvement in Gina's treatment but, rather, when they discovered the causal event culminating in Gina's legal

---

5. The *Daniels* court further explained that a jury "cannot undertake such a fact-specific inquiry without being informed *as to which event it is evaluating* for whether the plaintiff was aware or should have been aware of what was the negligent cause of his injury." *Daniels v. Gamma West Brachytherapy, LLC,* 2009 UT 66, ¶ 31, 221 P.3d 256 (emphasis added).

injury. *See Daniels,* 2009 UT 66, ¶ 29, 221 P.3d 256.

¶ 19 Here, it is unclear that a specific, causal event of negligence was ever discovered. The Arnolds' original complaint, dated December 4, 2001, named both Dr. White and Dr. Grigsby as defendants and alleged negligence in the initial colonoscopy and subsequent treatments, including the various laparoscopic procedures. However, no party has pointed to "which treatment in particular," *id.* ¶ 30, was negligent and culminated in Gina's legal injury.

¶ 20 At the earliest, negligence in this case occurred on July 22, 1999. However, because Dr. Grigsby was not involved in Gina's original colonoscopy, he most likely could not have been negligent in her treatment, culminating in a legal injury, until his participation in the August 3, 1999, laparoscopic procedure. Negligence also may have occurred, the Arnolds allege, on August 5, 1999, during the laparoscopy performed by Dr. White at the direction of Dr. Grigsby. Seemingly, Dr. Grigsby's only other significant involvement in Gina's care was the laparoscopy he performed on August 11, 1999, the last treatment during which he could have been negligent. Dr. Grigsby's involvement, and therefore his potential negligence, can likely be narrowed down to having occurred between August 3 and August 11, 1999. However, narrowing down the time frame of the occurrence of alleged negligence is not determinative. The statute of limitations does not begin to run until the Arnolds *discovered or should have discovered* "the causal event of the injury." *Id.* ¶ 25.

¶ 21 In late 1999, the Arnolds consulted an attorney, who mailed a letter to UBMC on November 16, 1999, requesting Gina's medical records. Given that the medical records clearly state Dr. Grigsby's involvement in Gina's care, the Arnolds definitely knew or should have known, upon receipt of the medical records,[6] that any actionable negligence by Dr. Grigsby likely occurred between August 3 and August 11, 1999. But one cannot glean from the medical records alone any information indicating that any particular procedure, including any in which Dr. Grigsby was involved during early August 1999, was negligently performed. Thus, review of the medical records did not permit the Arnolds to identify which procedure, under *Daniels,* was the triggering "causal event." *Id.* ¶ 29.

¶ 22 Of course, despite the arguments made by the parties on appeal, *Daniels* makes clear that this is, unlike most statute of limitations issues, ordinarily a *jury* question. *See id.* ¶ 31. The wisdom of this view is buttressed by the ambiguous facts of this case. It is undisputed that the Arnolds knew that something was wrong shortly after Gina underwent the procedures at UBMC, but we are not prepared to say that the average layperson in the Arnolds' position would have known this was because a mistake was made or been able to identify the legal cause, or causal event, of Gina's injuries in the months following her treatment. *Cf. USA Power, LLC v. PacifiCorp,* 2010 UT 31, ¶ 32, 235 P.3d 749 (stating that "[e]ven absent a complete conflict as to certain facts, a dispute of the understanding, intention, and consequences of those facts may defeat summary judgment") (citation and internal quotation marks omitted). Indeed, Dr. Grigsby would have us conclude that by November 11, 1999, at the latest, the Arnolds experienced some sort of "ah–HA" moment in which they recognized the causal event of Gina's injuries. But given the facts of this case, we cannot conclude that such an epiphany occurred when the Arnolds merely suspected something had gone wrong, or when they hired an attorney, or even when they received Gina's medical records, which do not concede or even suggest negligence at any point during her care.

¶ 23 To take the determination away from the jury, Dr. Grigsby had the burden of demonstrating as a matter of law that the Arnolds' complaint against him was time-barred when it was filed on December 4, 2001. *See generally* Utah R. Civ. P. 56(c). Dr. Grigsby has failed to make this showing on appeal.

---

**6.** The date on which Gina's medical records were received by her attorney is not in the record

because he has not demonstrated that the Arnolds knew or should have known which procedure was the causal event of Gina's injuries more than two years prior to filing their complaint, as required by *Daniels*. On the record as it now stands, a jury might well conclude that the cause of Gina's legal injury was Dr. Grigsby's decision to stick with an ineffective laparoscopic procedure when an open procedure was called for—a fact of which the Arnolds arguably did not learn until Dr. White's 2003 deposition.

¶ 24 Therefore, as in *Daniels*, the pivotal statute of limitations issue in this case presents a fact-sensitive question to be decided by a jury at trial. *See Daniels*, 2009 UT 66, ¶ 31, 221 P.3d 256. As stated by the Utah Supreme Court, "[w]hether and when a patient should have discovered an injury and its cause is a fact-intensive question that requires a jury to determine, given the information available, whether the actions taken in response to an injury and the efforts extended to discover its cause were adequate." *Id.* Accordingly, we reverse the trial court's summary judgment in favor of Dr. Grigsby and remand for trial, at which the jury can determine this question along with the other disputes at issue in this case.

## CONCLUSION

¶ 25 Dr. Grigsby failed to demonstrate as a matter of law that the Arnolds' complaint was not timely filed. We reverse the trial court's grant of summary judgment in favor of Dr. Grigsby and remand for trial.

¶ 26 WE CONCUR: JAMES Z. DAVIS, Presiding Judge and J. FREDERIC VOROS JR., Judge.