2012 UT 61

**Gina M. ARNOLD and Charles S. Arnold, Plaintiffs and Respondents,**

**v.**

**Gary B. White, M.D., Uintah Basin Medical Center, and David GRIGSBY, M.D., Defendants and Petitioner.**

**No. 20100780.**

Supreme Court of Utah.

Sept. 25, 2012.

Roger P. Christensen, Karra J. Porter, Robert S. Gurney, for respondents.

Larry R. White, Paul D. Van Komen, Daniel R. Harper, for petitioner.

Chief Justice DURRANT, opinion of the Court:

## INTRODUCTION

¶ 1 In this case, we consider whether the Utah Health Care Malpractice Act's two-year statute of limitations is triggered when a patient merely suspects that she has received negligent medical treatment. We also consider what a defendant must demonstrate, in a case where a plaintiff has alleged a course of negligent treatment, to show that the claim is barred by the two-year statute of limitations.

¶ 2 In the summer of 1999, Gina Arnold underwent several medical procedures performed by Dr. David Grigsby and Dr. Gary White.[1] Two years and three months after the treatment ended, Ms. Arnold filed a medical malpractice claim, alleging that these doctors were negligent in the course of their treatment. Dr. Grigsby moved for summary judgment, arguing that Ms. Arnold's claim was barred by the two-year statute of limitations set forth in the Utah Health Care Malpractice Act. The district court granted his motion and dismissed Ms. Arnold's claim.[2] But the court of appeals reversed, holding that Dr. Grigsby had failed to show that Ms. Arnold's claim was barred by the statute of limitations because he had failed to show that, more than two years before Ms. Arnold filed her complaint, she "knew or should have known *which procedure*" caused her injuries.[3] We granted Dr. Grigsby's petition for a writ of certiorari to review the court of appeals' decision.

¶ 3 We conclude that the court of appeals correctly reversed summary judgment. First, we hold that the court of appeals correctly found that, as a matter of law, Dr. Grigsby failed to show that Ms. Arnold filed her claim more than two years after she discovered or should have discovered her legal injury. But second, we hold that when a plaintiff alleges a course of negligent treatment, a defendant may show that the claim is barred by the two-year statute of limitations without identifying the specific procedure within the course of treatment that caused the patient's injury. Rather, to prevail, a defendant need only show that the plaintiff filed her claim more than two years after she discovered that the course of treatment was negligent. Thus, although we conclude that the court of appeals was correct in its decision to remand this case, we disagree, in part, with its reasoning.

## BACKGROUND

¶ 4 On July 22, 1999, Dr. White performed a colonoscopy on Ms. Arnold. The following day, she experienced pain in her lower abdomen and sought treatment at the emergency room at the Uintah Basin Medical Center (UBMC). Dr. White diagnosed her as having a perforated colon and admitted her to UBMC, where he treated her with antibiot-

---

1. Although Dr. White remains a defendant in Ms. Arnold's malpractice action, he is not a party to this appeal.

2. *Arnold v. Grigsby*, 2010 UT App 226, ¶ 9, 239 P.3d 294.

3. *Id.* ¶ 23 (emphasis added).

ics. Over the next few weeks, Dr. White and Dr. Grigsby performed four laparoscopic procedures to treat her and to eliminate the infection that the perforation had caused.[4]

¶ 5 Their efforts were unsuccessful, and Ms. Arnold's condition worsened. Concerned that his wife's condition was not improving, Ms. Arnold's husband requested that she be transferred out of the care of Dr. White and Dr. Grigsby. Ultimately, on August 16, 1999, Ms. Arnold was transferred from UBMC to St. Mark's Hospital in Salt Lake City.

¶ 6 The following month, Ms. Arnold consulted an attorney because she thought "something had gone wrong" with her treatment at UBMC and that she might "have a malpractice action." And on November 16, 1999, Ms. Arnold's attorney sent a letter to UBMC requesting Ms. Arnold's medical records. The letter stated that his office represented Ms. Arnold "relative to treatment she received following complications arising from an initial diagnosis and treatment of her for an intestinal condition" and that "complications following the initial treatment . . . rendered her totally incapacitated and prohibited her from maintaining her gainful employment." The letter also explained that they were "still in the investigatory stage" of their representation.[5]

¶ 7 Ms. Arnold ultimately filed her malpractice action against Dr. White and Dr. Grigsby on December 4, 2001. In her complaint, she alleged that she was a patient at UBMC "[c]ommencing on July 23, 1999, and continuing thereafter," and that "[t]he procedure and other care" she received "were performed in a negligent manner, causing . . . severe injuries and damages which have resulted in permanent disabilities."

¶ 8 Dr. Grigsby moved for summary judgment, arguing that Ms. Arnold's claim was barred by the two-year statute of limitations under the Utah Health Care Malpractice Act. He argued that Ms. Arnold had discovered her injury by the time she was transferred to St. Mark's Hospital on August 16, 1999, which would mean that the statute of limitations period expired on August 17, 2001— more than three months before Ms. Arnold filed her complaint. The district court agreed and granted summary judgment in favor of Dr. Grigsby. Ms. Arnold appealed.

¶ 9 The court of appeals reversed, noting that "[t]o take the determination away from the jury, Dr. Grigsby had the burden of demonstrating as a matter of law that [Ms. Arnold's] complaint against him was time-barred when it was filed on December 4, 2001."[6] And relying on our decision in *Daniels v. Gamma West Brachytherapy, LLC*,[7] the court of appeals held that Dr. Grigsby "failed to make this showing because he has not demonstrated that [Ms. Arnold] knew or should have known which procedure was the causal event of [her] injuries more than two years prior to filing [her] complaint."[8]

¶ 10 Dr. Grigsby filed a petition for a writ of certiorari with this court, seeking review of the court of appeals' decision. We granted his petition to resolve only one issue: whether the court of appeals erred in reversing the district court's order dismissing Ms. Arnold's complaint for failure to file within the period allowed by the statute of limitations. We have jurisdiction under section 78A–3–102(3)(a) of the Utah Code.

## STANDARD OF REVIEW

¶ 11 "When reviewing a case on certiorari, we review the court of appeals' decision for correctness."[9] Additionally,

4. Dr. White performed the first laparoscopic surgery on August 3, 1999, with assistance from Dr. Grigsby. Dr. White performed the second surgery on August 5, 1999. Dr. Grigsby performed the third surgery on August 11, 1999.

5. Although it is unclear when Ms. Arnold's attorney actually received her medical records, the court of appeals concluded that the records by themselves do not indicate that any particular procedure was performed negligently. *Arnold*, 2010 UT App 226, ¶ 21 & n.6, 239 P.3d 294.

6. *Id.* ¶ 23.

7. 2009 UT 66, 221 P.3d 256.

8. *Arnold*, 2010 UT App 226, ¶ 23, 239 P.3d 294; *see also Daniels*, 2009 UT 66, ¶¶ 1, 30, 221 P.3d 256.

9. *Massey v. Griffiths*, 2007 UT 10, ¶ 8, 152 P.3d 312 (internal quotation marks omitted).

summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law."[10] Thus, in considering whether the court of appeals properly reversed the district court's grant of summary judgment, we consider the facts and inferences therefrom in the light most favorable to the nonmoving party.[11]

## ANALYSIS

¶ 12 Because it concluded that disputed issues of material fact precluded summary judgment, the court of appeals reversed the district court's grant of summary judgment in this case.[12] Specifically, the court of appeals concluded that Dr. Grigsby failed to demonstrate, as a matter of law, that Ms. Arnold filed her claim more than two years after she discovered or should have discovered her legal injury.[13] We agree. But we disagree with the court of appeals' conclusion that Dr. Grigsby could not have prevailed on his motion without identifying the specific procedure within the course of treatment that allegedly caused Ms. Arnold's injury. Ultimately, although we disagree, in part, with the court of appeals' reasoning, we agree that this case should be remanded so that a jury may resolve the disputed factual issues and determine whether Ms. Arnold filed her claim more than two years after she discovered, or should have discovered, her legal injury. We first discuss the legal standard for determining whether a defendant has shown that a plaintiff's claim is barred by the Medical Malpractice Act's statute of limitations. We then apply this standard to the question of whether Dr. Grigsby showed that Ms. Arnold's claim was barred.

**A. To Show That a Medical Malpractice Claim Is Barred by the Two-Year Statute of Limitations, a Defendant Must Show That the Plaintiff Filed Her Claim More than Two Years After She Discovered, or Should Have Discovered, Her Legal Injury**

¶ 13 Dr. Grigsby argues that Ms. Arnold discovered her injury more than two years before she filed her claim, and that as a result, her claim is barred by the two-year statute of limitations. The Utah Health Care Malpractice Act provides both ·a two-year statute of limitations and a four-year statute of repose for the filing of medical malpractice actions.[14] Specifically, it requires that a medical malpractice action "be commenced within two years after the plaintiff or patient discovers, or through the use of reasonable diligence should have discovered the injury, whichever first occurs, but not to exceed four years after the date of the alleged act, ... neglect, or occurrence."[15] Generally, determining whether and when an injured patient discovered or should have discovered her legal injury is a fact-intensive question that requires a jury to consider "whether the actions taken in response to an injury and the efforts extended to discover its cause were adequate."[16]

¶ 14 As discussed below, we hold that an injured patient has not discovered her legal injury when she merely suspects that her injuries resulted from negligence. Further, we clarify our holding in *Daniels v. Gamma West Brachytherapy, LLC*[17] and explain that a course of treatment can trigger the two-year statute of limitations, even if a particular procedure within the course of treatment

---

10. Utah R. Civ. P. 56(c).

11. *Massey*, 2007 UT 10, ¶ 8, 152 P.3d 312.

12. *Arnold v. Grigsby*, 2010 UT App 226, ¶¶ 23, 25, 239 P.3d 294.

13. *Id.* ¶ 23.

14. *See Lee v. Gaufin*, 867 P.2d 572, 575–76 (Utah 1993) ("Statutes of limitations are essentially procedural in nature and establish a prescribed time within which an action must be filed after it accrues.... [S]tatutes of repose abolish a cause of action after a certain period, even if the action first accrues after the period has expired.").

15. Utah Code § 78B–3–404(1). Although this statute has been renumbered since the underlying facts of this case occurred, because the relevant language was not changed, we cite to the current version of the code for convenience.

16. *Daniels v. Gamma West Brachytherapy, LLC*, 2009 UT 66, ¶ 31, 221 P.3d 256.

17. 2009 UT 66, 221 P.3d 256.

has not been identified as causing the legal injury.

### 1. The Two–Year Statute of Limitations Is Not Triggered When a Patient Merely Suspects That Her Injury Was Caused by Negligence

■ ¶ 15 Dr. Grigsby argues that the two-year statute of limitations was triggered on the date that Ms. Arnold suspected that the medical complications she suffered were the result of negligence. We disagree. Under the Utah Health Care Malpractice Act, a patient has discovered her injury only when she has discovered her "legal injury—that is, both the fact of injury *and* that it resulted from negligence."[18] Indeed, "[w]e have long held that the two-year statute of limitations period commences to run only when the injured person knew or should have known of an injury and that the injury was caused by a negligent act."[19] This occurs "when a plaintiff first has actual or constructive knowledge of the relevant facts forming the basis of the cause of action."[20] Accordingly, as discussed in the following paragraphs, without more, neither (1) the existence of symptoms, (2) a suspicion that a doctor's negligence caused medical complications, nor (3) the commencement of an investigation is sufficient to trigger the statute of limitations.

■ ¶ 16 First, a patient's knowledge that she has suffered complications from a medical treatment or procedure is insufficient to trigger the two-year statute of limitations.

Indeed, we have held that the existence of symptoms alone is not a sufficient basis for a court to charge the plaintiff with knowledge that the symptoms were the result of negligence.[21] This is because "there often is a great disparity in the knowledge of those who provide health care services and those who receive the services with respect to expected and unexpected side effects of a given procedure, as well as the nature, degree, and extent of expected after effects."[22] Thus, while a patient "may be aware of a disability or dysfunction, there may be, to the untutored understanding of the average layman, no apparent connection between the treatment provided by a physician and the injury suffered."[23] And "[e]ven if there is, it may be passed off as an unavoidable side effect or a side effect that will pass with time."[24]

■ ¶ 17 Second, a patient's mere suspicion that her doctor was negligent is insufficient to trigger the two-year statute of limitations. As we explained in *Daniels*, "[n]othing in the statute's language or our interpretation of the statute limits the discovery of an injury to merely suspecting negligence without identifying its source."[25] Indeed, virtually all patients who suffer unforeseen complications resulting from a medical procedure may suspect that their health care providers did something incorrectly. But we decline to interpret the Health Care Malpractice Act in a way that would encourage patients to file a lawsuit every time a medical procedure results in an unfavorable outcome.[26]

18. *Id.* ¶ 1 (emphasis added).

19. *Collins v. Wilson*, 1999 UT 56, ¶ 19, 984 P.2d 960; *see also Seale v. Gowans*, 923 P.2d 1361, 1363 (Utah 1996) (noting that "the two-year limitations period does not commence to run until the injured person knew or should have known that he had sustained an injury and that the injury was caused by negligent action" (internal quotation marks omitted)); *Brower v. Brown*, 744 P.2d 1337, 1338–40 (Utah 1987) (explaining that a plaintiff has discovered her legal injury when she knew or should have known both of her injury and that it resulted from negligence); *Foil v. Ballinger*, 601 P.2d 144, 148 (Utah 1979) ("[W]e hold that the term discovery of 'injury' ... means discovery of injury and the negligence which resulted in the injury.").

20. *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 22, 108 P.3d 741 ("Once the triggering event identified by the statutory discovery rule occurs—i.e., when a plaintiff first has actual or constructive knowledge of the relevant facts forming the basis of the cause of action—the statutory limitations period begins to run and a plaintiff who desires to file a claim must do so within the time specified in the statute.").

21. *Foil*, 601 P.2d at 147.

22. *Id.*

23. *Id.*

24. *Id.*

25. *Daniels*, 2009 UT 66, ¶ 27, 221 P.3d 256.

■ ¶ 18 Although suspicion is insufficient to trigger the two-year statute of limitations, actual knowledge of negligence is not required. "A plaintiff need not have certain knowledge of negligence in order to have 'discovered' it. All that is necessary is that the plaintiff be aware of facts that would lead an ordinary person, using reasonable diligence, to conclude that a claim for negligence may exist." [27] Similarly, we have explained that a statutory discovery rule, such as the one set forth in the Utah Health Care Malpractice Act, is triggered "when a plaintiff first has actual or constructive knowledge of the relevant facts forming the basis of the cause of action." [28]

¶ 19 Further, we have noted that "[o]ne of the chief purposes of the Utah Health Care Malpractice Act was to prevent the filing of unjustified lawsuits." [29] Interpreting the statute to require injured patients to file complaints against health care providers based on suspicion alone is inconsistent with the "unarguably sound proposition that unfounded claims should be strongly discouraged." [30] Indeed, if mere suspicion were enough to trigger the two-year statute of limitations under the Act, then the period for filing a malpractice action could expire well before an injured patient is able to file a complaint that complies with rule 11.[31] But as we have already noted, "when injuries are suffered that have been caused by an unknown act of negligence . . . [,] the law ought not to be construed to destroy a right of action before a person even becomes aware of the existence of that right." [32] Thus, demonstrating that a plaintiff discovered or should have discovered her legal injury requires more than showing that the plaintiff merely suspected that her doctor had been negligent.

■ ¶ 20 Third, we conclude that a plaintiff's initiation of an investigation to determine whether her injury was the result of negligence is insufficient to trigger the statute of limitations. Such an investigation, by its nature, indicates that the plaintiff has not yet discovered that her "injury . . . resulted from negligence," and has thus not yet discovered her legal injury.[33] Indeed, the purpose of an investigation is typically to uncover facts that might "lead an ordinary person . . . to conclude that a claim for negligence may exist." [34] In other words, a plaintiff cannot be charged with *knowledge* that her injury resulted from negligence on the date she begins her investigation to determine *whether* her injury resulted from negligence. Instead, an injured patient who investigates whether her injury is the result of negligence has discovered her legal injury only when her investigation reveals "the relevant facts forming the basis of the cause of action." [35]

■ ¶ 21 Thus, without more, neither symptoms, suspicion, nor the beginning of an investigation are sufficient to demonstrate that an injured patient has discovered that negligence caused her injury, because each falls short of actual or constructive knowl-

26. *See id.* ¶ 30.

27. *Jensen v. IHC Hosps., Inc.*, 2003 UT 51, ¶ 61, 82 P.3d 1076 (alterations omitted) (internal quotation marks omitted); *see also Collins*, 1999 UT 56, ¶ 19, 984 P.2d 960 ("[D]iscovery of legal injury . . . encompasses both awareness of physical injury and knowledge that the injury is or may be attributable to negligence." (emphasis omitted) (internal quotation marks omitted)).

28. *Russell Packard Dev., Inc.*, 2005 UT 14, ¶ 22, 108 P.3d 741.

29. *Foil*, 601 P.2d at 148; *see also Daniels*, 2009 UT 66, ¶ 30, 221 P.3d 256 (requiring that "a patient must not only suspect negligence in a medical treatment, but must also suspect which treatment in particular implicates negligent care to avoid pursuing unfounded litigation").

30. *See Foil*, 601 P.2d at 148.

31. *See* UTAH R. CIV. P. 11(b)(3) (requiring that "the allegations and other factual contentions" in a complaint "have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery").

32. *Foil*, 601 P.2d at 147.

33. *See Daniels*, 2009 UT 66, ¶ 1, 221 P.3d 256.

34. *See Jensen*, 2003 UT 51, ¶ 61, 82 P.3d 1076 (internal quotation marks omitted).

35. *Russell Packard*, 2005 UT 14, ¶ 22, 108 P.3d 741.

edge that negligence caused the injury. Accordingly, the two-year statute of limitations is triggered only when the plaintiff's investigation has revealed "facts that would lead an ordinary person, using reasonable diligence, to conclude that a claim for negligence may exist." [36]

2. A Plaintiff's Discovery That a Course of Treatment Was Negligent Triggers the Two–Year Statute of Limitations Under the Utah Health Care Malpractice Act

¶ 22 The court of appeals held that, to show that Ms. Arnold's claim was barred by the two-year statute of limitations, Dr. Grigsby was required to point to "which treatment in particular was negligent and culminated in [Ms. Arnold's] legal injury." [37] On appeal, Dr. Grigsby argues that, because Ms. Arnold's complaint alleges that his course of treatment was negligent, he should not be required to show which specific procedure within the course of treatment caused her alleged injury.[38] He contends that such a requirement would impliedly force him to admit that he was negligent in order to prevail on his argument that Ms. Arnold's claim is barred by the statute of limitations. We agree. Under the Utah

Health Care Malpractice Act, the two-year statute of limitations is triggered only when the injured patient "discovers which medical event allegedly caused [her] injury." [39] Consequently, whether the two-year statute of limitations is triggered depends, in part, upon the type of treatment that the injured patient received.

¶ 23 A patient who suffers from complications after undergoing only one medical treatment or procedure has no trouble identifying the particular treatment that caused her injury.[40] Indeed, she has discovered the particular treatment that caused her injury even if she has not identified the particular doctor who is responsible for it.[41] Thus, once she discovers that her injuries resulted from negligence, the two-year statute of limitations is triggered. But a patient who suffers from complications after undergoing "multiple medical treatments or ... numerous medical procedures" has not necessarily discovered her legal injury, even if she knows that her injuries were caused by negligence.[42] Although this patient is aware that she is injured and that her injury is the result of negligence, she has not identified the "causal event" that caused her injury because she has not yet "sufficiently tied it to

---

36. *Jensen*, 2003 UT 51, ¶ 61, 82 P.3d 1076 (internal quotation marks omitted); *see also Collins*, 1999 UT 56, ¶ 19, 984 P.2d 960 ("[D]iscovery of legal injury ... encompasses both awareness of physical injury and knowledge that the injury is or may be attributable to negligence." (emphasis omitted) (internal quotation marks omitted)).

37. *Arnold*, 2010 UT App 226, ¶ 19, 239 P.3d 294 (internal quotation marks omitted).

38. Reasoning that Dr. Grigsby had the burden of identifying the event that triggered the statute of limitations, the court of appeals also concluded that Dr. Grigsby failed to meet his burden because the causal event of Ms. Arnold's injuries had not been identified. *Id.* ¶ 23. On appeal, Dr. Grigsby argues that, in alleging a continuous course of negligent treatment, Ms. Arnold identified the causal event of her injuries in her initial complaint. But Dr. Grigsby conflates the identification of a course of treatment with the identification of a cause of action. We reject his argument. Nonetheless, as discussed below, we conclude that Dr. Grigsby was not required to show a more specific causal event than the course of treatment Ms. Arnold identified in her complaint.

39. *Daniels*, 2009 UT 66, ¶ 30, 221 P.3d 256; *see also id.* ¶ 25 (holding that an injured patient has discovered her legal injury when she "discovered or should have discovered *which* event might have caused [her] injury").

40. As we explained in *Daniels*, when there has been a single medical event—even if the treatment was provided by multiple doctors—"a patient who is injured and suspects negligence may investigate this suspicion with adequate time to bring a claim based on the facts of that medical treatment," and "[i]n such cases, the patient has discovered [her] legal injury, including the medical injury and its source." *Id.* ¶ 29.

41. *Id.* ("[W]hile a patient may not be required to discover the specific individual responsible for [her] injury, [she] must discover the causal event before the statute of limitations begins to run."). She may add unknown defendants as the case progresses. *Id.*

42. *Id.*

its source in a medical procedure."[43] Thus, the two-year statute of limitations is not triggered.

¶ 24 We articulated this rule in *Daniels*.[44] The plaintiff in *Daniels* suffered complications following multiple radiation treatments from different providers at two different facilities.[45] In other words, the plaintiff underwent two different courses of treatment.[46] At issue was whether the jury should have been instructed that the two-year statute of limitations was triggered when the plaintiff first discovered that he might have been treated negligently at some point during either of the courses of treatment he underwent, or whether the statute of limitations was instead triggered only when he discovered that the "specific treatment" he received from a particular doctor at a particular facility was negligent.[47] We held that the statute of limitations was tolled until the plaintiff discovered which particular procedure was performed negligently.[48] But we required such specificity in *Daniels* only because the defendant had received more than one course of treatment that could have caused his injury.[49]

 ¶ 25 We take this opportunity to clarify that a plaintiff's discovery that a course of treatment was negligent can trigger the two-year statute of limitations. Accordingly, when a plaintiff alleges that a single course of treatment was negligent, a defendant can point to the date that the plaintiff discovered that the course of treat-

ment was negligent to show that the malpractice action is barred by the two-year statute of limitations.[50] A defendant need not show that the plaintiff ever discovered that a particular procedure within the course of treatment was negligent.

¶ 26 For example, a patient may suffer complications after receiving several related medical treatments over a period of time. If she later visits a new doctor who suggests that the treatments were performed negligently and that the first doctor's negligence caused the complications, then the two-year statute of limitations is triggered. Although the patient might not have discovered the specific date or dates upon which she received negligent treatment, she has discovered that negligence occurred at some point during the course of treatment. Thus, she has "sufficiently tied [her injury] to its source in a medical procedure," and triggered the two-year statute of limitations.[51]

 ¶ 27 In this case, although we conclude that the court of appeals was correct in its reversal of summary judgment, we hold that it was mistaken in its analysis on this issue. Specifically, the court of appeals incorrectly concluded that Dr. Grigsby was required to identify "which treatment in particular," within the course of treatment, caused Ms. Arnold's injury.[52]

¶ 28 Ms. Arnold alleged that the series of procedures Dr. Grigsby performed to treat her perforated colon were performed negligently.[53] In other words, Ms. Arnold alleged

---

43. *Id.* ¶¶ 25, 29.

44. 2009 UT 66, 221 P.3d 256.

45. *Id.* ¶¶ 1, 6–9.

46. *See id.*

47. *Id.* ¶ 1.

48. *Id.* ¶¶ 1, 30.

49. *Id.* ¶ 29.

50. Alternatively, a defendant may show that the plaintiff's claim is barred by the four-year statute of repose by showing that the plaintiff filed her claim more than four years after the course of treatment concluded.

51. *See id.*

52. *See Arnold*, 2010 UT App 226, ¶ 19, 239 P.3d 294 (internal quotation marks omitted); *see also id.* ¶ 23 ("Dr. Grigsby has failed to [show that Ms. Arnold's complaint was time-barred] because he has not demonstrated that [Ms. Arnold] knew or should have known which procedure was the causal event of [her] injuries more than two years prior to filing [her] complaint, as required by *Daniels*.").

53. The parties dispute whether Ms. Arnold pled a continuous course of negligent treatment. We note that although the phrase "continuous course of negligent treatment" does not appear in Ms. Arnold's complaint, her factual allegations support a claim of medical malpractice based on a continuous course of negligent treatment. Accordingly, we consider her complaint to allege a continuous course of negligent treatment. *See Collins*, 1999 UT 56, ¶ 11 n.9, 984 P.2d 960

that a single course of treatment was negligent. Thus, her complaint identified "which medical event caused [her] injury," even though she did not identify the particular procedure that she alleges was negligent. In this context, Dr. Grigsby had no burden to show which particular procedure within the course of treatment caused Ms. Arnold's alleged injury. Instead, he could have prevailed by showing that Ms. Arnold filed her claim more than two years after she discovered, or should have discovered, that the course of treatment was negligent. Accordingly, because Ms. Arnold alleged that the entire course of treatment was negligent, the court of appeals was incorrect in stating that Dr. Grigsby was required to point to a specific procedure within that course of treatment to show that Ms. Arnold's claim was barred by the statute of limitations.

### B. Dr. Grigsby Failed to Show That Ms. Arnold Filed Her Action More than Two Years After She Discovered, or Should Have Discovered, That Her Injuries Resulted from Negligence

¶ 29 Having discussed the legal principles at issue in this case, we turn to the question of whether Dr. Grigsby demonstrated that Ms. Arnold's claim was barred by the two-year statute of limitations. Ms. Arnold alleged in her complaint that she received negligent medical treatment beginning July 22, 1999 "and continuing thereafter." Specifically, during her time at UBMC, Ms. Arnold underwent four procedures, the last of which Dr. Grigsby performed on August 11, 1999. She was then transferred out of Dr. Grigsby's care on August 16, 1999. It is therefore undisputed that any negligent treatment occurred, if at all, no later than August 16, 1999. Ms. Arnold ultimately filed her complaint on December 3, 2001, approximately two years and three months after the treatment ended. She was therefore safely within the Act's four-year statute of repose when she filed her complaint.

¶ 30 Thus, for Dr. Grigsby to prevail on his argument that Ms. Arnold's claim was barred, he must show that her claim is barred by the two-year statute of limitations. And to prevail on summary judgment, he must show that there is no genuine issue of material fact as to whether Ms. Arnold had discovered or should have discovered her legal injury before December 3, 1999.[54] We agree with the court of appeals that he failed to make this showing. Because he has not demonstrated that Ms. Arnold discovered or should have discovered, before December 3, 1999, that her medical complications resulted from negligence, Dr. Grigsby has not shown that Ms. Arnold discovered her legal injury before that date.

¶ 31 As we have explained in this opinion, the two-year statute of limitations is triggered only when the plaintiff's investigation has revealed, or should have revealed, both the fact of injury *and* that the injury resulted from negligence. But in attempting to demonstrate that Ms. Arnold's claim was barred by the two-year statute of limitations, Dr. Grigsby points only to the following facts. First, on August 16, 1999, after Dr. Grigsby's efforts to treat Ms. Arnold's infection had failed, Ms. Arnold's husband expressed concern that she was not improving and requested that she be transferred to another hospital. Second, Ms. Arnold stated that in September of 1999, she consulted with an attorney because she "knew that something had happened that shouldn't have happened." And third, in a November 16, 1999 letter, Ms. Arnold's attorney stated that he represented Ms. Arnold regarding "treatment she received following complications arising from an initial diagnosis and treatment of her for an intestinal condition."

¶ 32 From these facts, Dr. Grigsby has shown, at most, that Ms. Arnold suspected that her injury may have been caused by negligence. But indications that Ms. Arnold suspected that her health problems were caused by negligence are not sufficient to demonstrate that her claim is barred by the

(suggesting that whether a plaintiff has alleged a continuous course of negligent treatment can be determined from the facts alleged in the complaint).

**54.** *See* Utah Code § 78B-3-404(1); Utah R. Civ. P. 56(c).

two-year statute of limitations.[55] Instead, to demonstrate that Ms. Arnold's claim is barred by the two-year statute of limitations, Dr. Grigsby was required to establish that Ms. Arnold discovered, or that she should have discovered, that her medical complications were caused by negligence more than two years before she filed her claim. Accordingly, we agree with the court of appeals that this case should be remanded so that a jury can determine whether Ms. Arnold filed her claim more than two years after she discovered, or should have discovered, her legal injury.

## CONCLUSION

¶ 33 The court of appeals correctly held that Dr. Grigsby failed to show, as a matter of law, that Ms. Arnold filed her claim more than two years after she discovered her legal injury. We note, however, that to prevail on his claim that the two-year statute of limitations had elapsed, Dr. Grigsby was not required to be more specific in his identification of the particular treatment that allegedly caused Ms. Arnold's legal injury than she was in her initial complaint. We hold that when a plaintiff claims that a course of treatment was negligent, a defendant can show that the claim is barred by the two-year statute of limitations by demonstrating that more than two years elapsed between the date the plaintiff discovered or should have discovered that the course of treatment was negligent and the date she filed her claim. Dr. Grigsby failed to make this showing. Accordingly, we agree that material issues of fact in this case render the district court's grant of summary judgment inappropriate. We affirm the court of appeals' reversal of summary judgment in favor of Dr. Grigsby and we remand for the jury to determine whether Ms. Arnold filed her claim more than two years after she discovered or should have discovered her legal injury.

Chief Justice DURRANT authored the opinion of the Court, in which Associate Chief Justice NEHRING, Justice DURHAM, Justice PARRISH, and Justice LEE joined.