*This opinion is subject to revision before final publication in the Pacific Reporter*

**2020 UT 57**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

ERIK JENSEN,
*Appellant,*

*v.*

IHC HEALTH SERVICES, INC. dba LDS HOSPITAL,
*Appellee.*

No. 20190026
Heard March 9, 2020
Filed August 17, 2020

On Direct Appeal

Third District, Salt Lake
The Honorable Barry G. Lawrence
No. 150900735

Attorneys:
Charles H. Thronson, Salt Lake City, for appellant

Nathan W. Burbidge, Paul D. Van Komen, Patrick L. Tanner,
Salt Lake City, for appellee

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PEARCE joined.

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1   Erik Jensen suffered a cardiac arrest after undergoing abdominal surgery at LDS Hospital. His heart did not beat for over fifteen minutes, and he suffered brain damage as a result. Just under five years later, he filed this medical malpractice claim against LDS Hospital.

¶2   LDS Hospital requested a bifurcated trial to first determine if Jensen had missed the applicable two-year statute of limitations. The jury found that he had. And the trial court entered judgment against Jensen.

¶3   Jensen appeals the judgment, arguing that the trial court erred in its jury instruction defining the "discovery of legal injury," which starts the running of the statute of limitations in medical malpractice actions.

¶4   We conclude the instructions as a whole were correct. We affirm.

## BACKGROUND

¶5   On March 26, 2010, Erik Jensen went to the emergency room at LDS Hospital, an IHC Health Services facility, "with complaints of abdominal pain that had been going on for a few hours." After undergoing a computed tomography,[1] Jensen was prepared for and sent to "the operating room for a diagnostic laparoscopy, which [was] subsequently converted to an open laparotomy because he had an unusual inflammatory reaction in his abdomen." After the surgery, Jensen remained in the hospital to recover. He did "fairly well" for the first few days. But then he experienced complications and was transferred to the intensive care unit.

¶6   The hospital staff conducted a second surgery to ensure there was nothing wrong with Jensen's abdomen, after which he returned to the intensive care unit. On the morning of April 1, 2010, Jensen experienced cardiac arrest and for "15 to 17 minutes" his heart did not beat. As a result, Jensen suffered brain damage. He was then transferred to a different IHC Health Services facility.

¶7   On April 26, 2010, Jensen signed a power of attorney authorizing his mother to act on his behalf. Jensen and his mother met with Colin King, a medical malpractice attorney, to discuss a potential malpractice action. As part of his investigation into the potential claim, King requested Jensen's medical records from LDS Hospital and sent them to two different experts. After more than a year of investigation, King declined to represent Jensen. King advised Jensen's mother that while LDS Hospital may have provided substandard care in some respects, it would be difficult to prove that this made any difference to Jensen's outcome.

¶8   After being turned away by King, Jensen's mother met with another law firm, Siegfried and Jensen, to discuss potential

---

[1] Also known as a CT or CAT scan.

representation. Three days later, Siegfried and Jensen also declined to represent Jensen. After her meetings with King and Siegfried and Jensen, Jensen's mother concluded that her son's injury "was not due to medical mistake or negligence." She instructed Siegfried and Jensen to destroy the medical records.

¶9 Jensen's father met Charles Thronson, a medical malpractice attorney, at a social event in March 2014. Jensen's father and Thronson discussed Jensen's injury and Thronson offered "to look at [Jensen's] case but needed to get medical records as soon as possible to avoid the running of the four-year statute [of repose]." Thronson shared Jensen's medical records with an expert who concluded that the cardiac arrest was caused by several breaches of the standard of care. Thronson called Jensen to inform him of the reported breaches and offered to represent him.

¶10 Jensen retained Thronson. And on March 21, 2014, Jensen served the defendants with notice of his intent to commence an action pursuant to Utah Code section 78B-3-412(1)(a). Jensen received a certificate of compliance from the Division of Occupational and Professional Licensing (DOPL), as was required at the time under section 78B-3-412(1)(b),[2] and he filed suit on February 2, 2015.

¶11 In the trial court, LDS Hospital moved for summary judgment, arguing that the four-year statute of repose had expired before Jensen filed his complaint. Jensen responded that both the statute of repose and the two-year statute of limitations should have been tolled during the period of prelitigation review. The trial court agreed and denied the motion.

¶12 LDS Hospital then moved for a bifurcated trial to first determine only whether Jensen's lawsuit was barred by the applicable two-year statute of limitations. The trial court granted the motion.

¶13 At trial, the parties advocated for different jury instructions on the meaning of a plaintiff's "discovery of legal

_____

[2] We have since held unconstitutional the requirement that a plaintiff obtain a certificate of compliance from DOPL in order to initiate a malpractice action against a health care provider. *See Vega v. Jordan Valley Med. Ctr., LP*, 2019 UT 35, ¶ 24, 449 P.3d 31.

injury," which triggers the running of the statute of limitations. Ultimately, the trial court instructed the jury that

> [d]iscovery of a "legal injury" in this context occurs when a patient knows, or through reasonable diligence should know, each of the following: (1) that he sustained an injury; (2) the cause of the injury; and (3) that the injury may have been caused by a negligent act of a medical provider.

¶14 After a three-day trial, the jury found that Jensen discovered or should have discovered his legal injury more than two years before he commenced the action. Thus, the action was barred by the statute of limitations, and the trial court entered judgment against Jensen.

¶15 Jensen timely appealed. He challenges the correctness of the trial court's jury instruction on "discovery of legal injury."

## STANDARD OF REVIEW

¶16 We review "'[a] trial court's ruling concerning a jury instruction . . . for correctness,' without deference to its interpretation of the law." *Arnold v. Grigsby* (*Arnold V*), 2018 UT 14, ¶ 11, 417 P.3d 606 (citation omitted). "A new trial will not be granted unless any error of the trial court was prejudicial, meaning that it misadvised or misled the jury on the law." *Id.* (citation omitted).

## ANALYSIS

¶17 Jensen argues that during the bifurcated trial, the trial court erred in its instruction defining a plaintiff's "discovery of legal injury." In a medical malpractice action, this discovery commences the running of the statute of limitations.

¶18 Under the Utah Health Care Malpractice Act (Malpractice Act), a malpractice action must be "commenced within two years after the plaintiff or patient discovers, or through the use of reasonable diligence should have discovered the injury." UTAH CODE § 78B-3-404(1). In *Foil v. Ballinger*, we interpreted the word "injury" to encompass both "discovery of injury and the negligence which resulted in the injury." 601 P.2d 144, 148 (Utah 1979). We referred to this as a plaintiff's "legal injury," and we held that "the statute begins to run when an injured person knows or should know that he has suffered a *legal injury*." *Id.* at 147 (emphasis added).

¶19 Jensen argues that the trial court's instruction was erroneous for two reasons. First, with regard to the patient's discovery of negligence, Jensen argues that it was erroneous to instruct the jury that a patient's discovery occurs when the patient knows "that the injury *may have been caused* by a negligent act of a medical provider," rather than "that the injury *was caused* by a negligent act" of a medical provider. (Emphases added.)

¶20 Second, he argues that the trial court erroneously instructed the jury that discovery of a legal injury occurs when a patient "*knows*, or through reasonable diligence *should know*" each of the elements of his legal injury, rather than "when a patient *discovers*, or through reasonable diligence *should discover*" each element.[3] (Emphases added.)

*"May Have Been Caused" Versus "Was Caused"*

¶21 Jensen's first argument pertains to the third element of the disputed instruction. He argues it was error to instruct the jury that he had discovered the negligence element of his legal injury when he knew "that the injury *may have been caused* by a negligent act of a medical provider," rather than when he knew that the injury "*was caused*" by a negligent act of a medical provider. (Emphases added.) Fundamentally, this argument relates to how certain Jensen must have been that negligence caused his injury before he is considered to have "discovered" that component of his "legal injury." Jensen argues that a plaintiff's knowledge that an injury "may have been caused" by negligence is synonymous with a mere suspicion of negligence, which we have said is legally insufficient. *See Arnold v. Grigsby* (*Arnold IV*), 2012 UT 61, ¶ 17, 289 P.3d 449. Conversely, LDS Hospital argues that this verbiage is an accurate reflection of our

_____

[3] Jensen makes two additional arguments that we do not resolve. First, he argues that the knowledge of his mother and his various attorneys should not be imputed to him. But LDS Hospital asserts that he did not preserve this argument at trial, and in fact stipulated to jury instructions explaining that the knowledge of those individuals would be imputed to him. Jensen does not dispute LDS Hospital's representations. Second, Jensen proposes what he views as an optimal jury instruction. But this is not the instruction he proposed at trial, so this argument also is not preserved. Accordingly, we do not further address either argument.

case law. And it contends this is so even if the language is substantively equivalent to a suspicion of negligence.

¶22 As Jensen correctly observes, we have used both formulations in our case law. In *Foil*, we held that legal injury "means discovery of injury and the negligence *which resulted* in the injury." 601 P.2d at 148 (emphasis added). We have used similar language repeatedly. *See, e.g., Arnold IV*, 2012 UT 61, ¶ 15 ("[A] patient has discovered her injury only when she has discovered her 'legal injury—that is, both the fact of injury *and that it resulted* from negligence.'" (emphasis added) (citation omitted)); *Collins v. Wilson*, 1999 UT 56, ¶ 19, 984 P.2d 960 ("[T]he two-year statute of limitations period commences to run only when the injured person knew or should have known of an injury and that the injury *was caused* by a negligent act." (emphasis added)).

¶23 But we have also used more equivocal language, sometimes in the same case. *See, e.g., Arnold IV*, 2012 UT 61, ¶ 18 ("All that is necessary is that the plaintiff be aware of facts that would lead an ordinary person, using reasonable diligence, to conclude that a claim for negligence *may exist*." (emphasis added)); *Daniels v. Gamma W. Brachytherapy, LLC*, 2009 UT 66, ¶ 31, 221 P.3d 256 ("[T]he statute of limitations did not begin to run until [the plaintiff] discovered that the Defendants' treatment and care *might have been* negligent and thus *might have caused* his injuries." (emphases added)); *Collins*, 1999 UT 56, ¶ 19 ("[D]iscovery of legal injury, therefore, encompasses both awareness of physical injury and knowledge that the injury is *or may be attributable to negligence*." (quoting *Chapman v. Primary Children's Hosp.*, 784 P.2d 1181, 1184 (Utah 1989) *abrogated on other grounds by Bright v. Sorensen*, 2020 UT 18, 463 P.3d 626)).

¶24 Accordingly, our analysis of the requisite level of certainty in this context has not hinged on the specific words Jensen identifies. However, we have addressed the substance of this question a number of times. We have explained that absolute or "certain knowledge" of negligence is not required. *Arnold IV*, 2012 UT 61, ¶ 18. But we have also clarified that "without more, neither (1) the existence of symptoms, (2) a suspicion that a doctor's negligence caused medical complications, nor (3) the commencement of an investigation is sufficient to trigger the statute of limitations." *Id.* ¶ 15.

¶25 We have compared the discovery rule in the Malpractice Act with statutory discovery rules in general, explaining that

under a statutory discovery rule, the limitations period begins to run "when a plaintiff first has actual or constructive knowledge of the relevant facts forming the basis of the cause of action." *Id.* ¶ 18 (citation omitted). In a medical malpractice action, this refers to the moment when a patient first has knowledge or constructive knowledge of the facts underlying their malpractice claim—in other words, their legal injury: (1) the physical injury, (2) the causal event of the injury, and (3) that negligence (a breach in the standard of care) caused the injury. *See Daniels*, 2009 UT 66, ¶¶ 27, 29.

¶26 With regard to the third element—negligence—we have explained that the level of knowledge sufficient to trigger the limitations period is objective, not subjective. A defendant must establish the moment when the plaintiff discovered or should have discovered through reasonable diligence "facts that would lead an ordinary person . . . to conclude that a claim for negligence may exist." *Arnold IV*, 2012 UT 61, ¶¶ 18, 21 (citation omitted).

¶27 We conclude that the trial court's jury instructions as a whole correctly conveyed the law regarding when a plaintiff discovers negligence for purposes of triggering the statute of limitations. "[W]e look at the jury instructions in their entirety and will affirm when the instructions taken as a whole fairly instruct the jury on the law applicable to the case." *Arnold V*, 2018 UT 14, ¶ 40, 417 P.3d 606 (citation omitted).

¶28 While we have made clear that a patient's subjective suspicion of negligence is not legally sufficient to show discovery of a legal injury, we conclude that the trial court's jury instructions did not give such an impression even though they employed the "may have been caused" formulation. The instructions here stated,

> Discovery of Legal Injury Defined
>
> [Jensen] was required to have filed a medical malpractice claim within two years from the date that he discovered or should have discovered his "legal injury."
>
> Discovery of a "legal injury" in this context occurs when a patient knows, or through reasonable diligence should know, each of the following: (1) that he sustained an injury; (2) the cause of the injury; and (3) that the injury may have been caused by a negligent act of a medical provider.

. . .

Negligence Element

In evaluating the third element of legal injury, you must weigh all of the facts and circumstances to determine whether the facts here were sufficient to place (*sic*) an ordinary person, exercising reasonable diligence, to conclude that medical negligence may have occurred.

In making this determination you should note that, without more, neither the existence of symptoms, a patient's suspicions of negligence, nor the commencement of an investigation, is sufficient to inform a patient that a claim for negligence may exist. However, the law does not require a patient to have actual or certain knowledge of negligence.[4]

Jensen takes issue with a particular phrase within a specific jury instruction. But we conclude that, taken as a whole, the trial court's instructions accurately described the relevant law—specifically that a plaintiff has discovered negligence for purposes of the "discovery of legal injury" when the plaintiff first discovers or in the exercise of reasonable diligence should have discovered facts sufficient to lead an ordinary person to conclude that the

---

[4] At oral argument, LDS Hospital argued that it would be improper for a trial court to define "negligence" for the jury in a bifurcated trial focusing only on the statute of limitations, because it could lead the jury to assess the merits of the case. While Jensen has not raised this as a failing of the instructions here, we briefly address LDS Hospital's argument. We do not see why a definition of negligence would lead to a trial on the merits, assuming the instructions adequately explained that the question before the jury was only whether the plaintiff filed suit within the two-year statute of limitations. The instruction on discovery of a legal injury asks the jury to determine whether the plaintiff discovered facts that would lead an ordinary person to conclude that the injury was (or may have been) due to negligence. Negligence is a legal term. We disagree with LDS Hospital's assertion that the jury should be expected to apply this instruction without being informed of the meaning of negligence.

injury was or may have been caused by negligence.[5] *See Arnold IV*, 2012 UT 61, ¶¶ 15, 18; *Collins*, 1999 UT 56, ¶ 19.

*"Knows" Versus "Discovers"*

¶29 Jensen's second argument is that the trial court erred in instructing the jury that discovery of a legal injury occurs when a patient "*knows*, or through reasonable diligence should *know* . . . (1) that he sustained an injury; (2) the cause of the injury; and (3) that the injury may have been caused by a negligent act of a medical provider." (Emphases added.) He argues that the instruction should have used the word "discover" in place of "know."

¶30 As with Jensen's first argument, we have used both "knows" and "discovers" in our case law, and we have used them interchangeably. For example, in *Foil*, we held that the term "discovery of injury" in the Malpractice Act means "*discovery* of injury and the negligence which resulted in the injury." 601 P.2d at 148 (emphasis added). But we also said that the statute begins to run "when an injured person *knows or should know* that he has suffered a legal injury." *Id.* at 147 (emphasis added); *see also Arnold IV*, 2012 UT 61, ¶ 33 ("[A] defendant can show that the claim is barred . . . by demonstrating that more than two years elapsed between the date the plaintiff *discovered or should have discovered* that the course of treatment was negligent and the date she filed her claim." (emphasis added)); *Daniels*, 2009 UT 66, ¶ 25 ("[T]he determination of when a plaintiff is aware of the causal fact turns on a jury's determination of when a plaintiff acting with reasonable diligence *discovered or should have discovered which* event might have caused his injury." (emphasis added)); *Collins*, 1999 UT 56, ¶ 19 ("[T]he two-year statute of limitations period commences to run only when the injured person *knew or should have known* of an injury and that the injury was caused by a negligent act." (emphasis added)); *Brower v. Brown*, 744 P.2d 1337, 1338–39 (Utah 1987) ("This Court has defined discovery of the injury as *knowledge* of a legal injury; that is, the plaintiff must *know*

_____

[5] This does not mean that it would have been erroneous if the court had used the "was caused" terminology. We have used that formulation throughout our case law. And so long as a set of instructions correctly explain the substantive law applicable to the discovery of a legal injury, the instructions would be legally correct.

of the injury and of the negligence which caused the injury." (emphases added)); *Deschamps v. Pulley*, 784 P.2d 471, 475 (Utah Ct. App. 1989) (holding that the plaintiff *knew or should have known* her mother's injury was a result of medical negligence more than two years before filing an action). Beyond these two words, we have also employed synonymous terms such as "reveals," *Arnold IV*, 2012 UT 61, ¶ 20 and becomes "aware," *Daniels*, 2009 UT 66, ¶ 30; *Foil*, 601 P.2d at 147.

¶31 Importantly, Jensen has not explained how the use of "knows" instead of "discovers" renders the trial court's instructions erroneous. He argues only that "discovers" is preferable because it is the word used in the Malpractice Act. *See* UTAH CODE § 78B-3-404(1). And he asserts it is more precise than "knows" in this context.

¶32 We acknowledge that there are some benefits to using "discover" in place of "know" in this context. As Jensen notes, it is the language used in the statute. *Id.* (providing that an action "shall be commenced within two years after the plaintiff or patient discovers, or through the use of reasonable diligence should have discovered the injury").

¶33 And it does more precisely communicate that the jury must determine the moment in time "when a plaintiff first has actual or constructive knowledge of the relevant facts forming the basis of the cause of action." *Arnold IV*, 2012 UT 61, ¶ 18 (citation omitted). "Know" means "to have understanding of" or "to be aware of the truth or factuality of." *Know*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/know (last visited July 27, 2020). Whereas "discover" is defined as "to make known" or "to obtain sight or knowledge of for the first time." *Discover*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/discover (last visited July 27, 2020). We agree that "discover" connotes learning new information for the first time more precisely than does "know."

¶34 However, while we appreciate Jensen's point, he fails to explain why the trial court's use of "know" caused the disputed jury instruction to be legally incorrect. And in light of our use of both words interchangeably and their similar meanings, we see no reason to conclude that it was.

## CONCLUSION

¶35 When viewed as a whole, the trial court's jury instructions correctly stated the law relevant to discovery of a legal injury. We affirm.

————————