*This opinion is subject to revision before final publication in the Pacific Reporter*

**2018 UT 14**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

GINA M. ARNOLD,
*Appellant and Cross-appellee,*

*v.*

DAVID GRIGSBY, M.D.,
*Appellee and Cross-appellant.*

No. 20160191
Filed April 11, 2018

On Direct Appeal

Eighth District Court, Duchesne
The Honorable Samuel P. Chiara
No. 020800066

Attorneys:

Roger P. Christensen, Scott Evans, Sarah E. Spencer,
Gabriel K. White, Salt Lake City, for appellant and cross-appellee

Larry R. White, Paul D. Van Komen, Patrick L. Tanner,
Salt Lake City, for appellee and cross-appellant

JUSTICE HIMONAS authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE PEARCE, and JUDGE TOOMEY joined.

Due to her retirement, JUSTICE DURHAM did not participate herein;
COURT OF APPEALS JUDGE KATE A. TOOMEY sat.

JUSTICE PETERSEN became a member of the Court on
November 17, 2017, after oral argument in this matter
and accordingly did not participate.

JUSTICE HIMONAS, opinion of the Court:

## INTRODUCTION

¶1    Gina Arnold went in for a routine colonoscopy and ended up with a potentially fatal condition when her bowel was perforated during the procedure. She subsequently filed a medical

malpractice claim against Dr. David Grigsby. This appeal is from a medical malpractice suit where the jury concluded that Ms. Arnold's lawsuit against Dr. Grigsby was time-barred. In particular, the jury found that Ms. Arnold's cause of action against Dr. Grigsby had accrued—that she should have known of her injury and that it was caused by Dr. Grigsby's negligence—more than two years before she filed suit. Because of this, the jury concluded that the Utah Medical Malpractice Act's two-year statute of limitations barred Ms. Arnold's claim.

¶2 On appeal, Ms. Arnold argues that the trial court committed four errors. First, she argues that the trial court erroneously denied her motion for summary judgment on the issue of whether she should have known that she had a cause of action more than two years before she filed suit. Second, Ms. Arnold argues that the trial court made a variety of evidentiary errors: it erred in admitting two pieces of evidence that she says were impermissible hearsay—(1) her husband's statement that a nurse had told him Ms. Arnold had received substandard care, and (2) a document on which a nurse had noted that Ms. Arnold said she intended to sue her doctors—and it also erred in excluding evidence Ms. Arnold had proffered. Third, she argues that the trial court erred in denying her motion for a directed verdict regarding whether she should have known of her cause of action more than two years before she filed suit. Finally, Ms. Arnold argues that the trial court gave the jury several misleading instructions pertaining to what Dr. Grigsby had to show to prove she should have known about her cause of action more than two years before she filed suit. Dr. Grigsby cross-appealed the trial court's entry of summary judgment for Ms. Arnold on the issue of whether she actually knew of her cause of action more than two years before she filed suit.

¶3 We affirm. We hold that a jury could permissibly find for Dr. Grigsby based on the evidence before it. We hold that the trial court's decision not to grant summary judgment isn't reviewable—and we further explain why an earlier decision by this court, *Arnold v. Grigsby*, 2012 UT 61, 289 P.3d 449, in which we affirmed the court of appeals reversal of a grant of summary judgment to Dr. Grigsby on this same issue, isn't to the contrary. We hold that the trial court's evidentiary decisions weren't in error: it wasn't an abuse of discretion for the court to admit Ms. Arnold's husband's testimony, and the nurse's report was admissible under the business records exception to the bar on hearsay; similarly, the court correctly excluded all the evidence Ms. Arnold proffered. We hold that a directed verdict isn't warranted here where sufficient evidence was

offered to sustain a jury verdict in favor of Dr. Grigsby. And, finally, we hold that, read as a whole, the jury instructions in this case weren't misleading. And because we affirm, we dismiss the cross-appeal as moot.

## BACKGROUND

¶4 In July 1999, Dr. Gary White performed an outpatient colonoscopy on Ms. Arnold. During the procedure, Dr. White unknowingly perforated Ms. Arnold's colon when removing a small polyp. The next day, Ms. Arnold, experiencing symptoms, went to the emergency room where Dr. White diagnosed the perforation and admitted her to Uintah Basin Medical Center hospital (UBMC), a small rural hospital in Roosevelt, Utah. Initially, she was unsuccessfully treated with antibiotics. Dr. White and Dr. Grigsby subsequently performed four laparoscopic procedures to treat the infection caused by the perforation. Their efforts were unsuccessful. Mr. Arnold testified that before his wife was transferred to St. Mark's Hospital, a nurse had told him that she needed to be transferred or she'd die, and the nurse was critical of the physician's care. At her husband's request, she was transferred on August 16, 1999, to St. Mark's Hospital in Salt Lake City, where major surgery (a colostomy) commenced within hours to treat her perforation and infection.

¶5 On August 26, 1999, a home health care nurse, Denice Vernieuw, recorded on a sticky note attached to the intake form that Ms. Arnold had crossed out portions of the form because she'd been told by her lawyer not to sign papers agreeing to pay. This note was entered into her record and recorded in Ms. Arnold's electronic patient notes by office staff five days later. Ms. Arnold's friend, daughter of attorney Harold Hintze, visited and assisted Ms. Arnold frequently after she returned home to Roosevelt. After some form of consultation, Ms. Arnold signed an authorization and request for release of medical information in September 1999. Mr. Hintze sent a request to UBMC for her medical records on November 16, 1999. Mr. Hintze has no recollection of receiving Ms. Arnold's records, and by November 1999, began other legal work in Panama. And Ms. Arnold, not having heard back from Mr. Hintze, hired another attorney the next spring.

¶6 Ms. and Mr. Arnold filed their initial complaint on December 4, 2001, against three defendants: Dr. Gary White, Dr. David Grigsby, and the UBMC. This appeal only encompasses the action against Dr. Grigsby. In 2005, Dr. Grigsby moved for summary judgment because he purported that the two-year statute

of limitations had expired. The trial court granted summary judgment. The Arnolds subsequently appealed, arguing that the statute of limitations had been tolled when Dr. Grigsby left the state in July 2000. The court of appeals reversed the trial court, a decision Dr. Grigsby appealed. *Arnold v. Grigsby*, 2008 UT App 58, ¶ 24, 180 P.3d 188, *rev'd*, 2009 UT 88, 225 P.3d 192. We reversed the court of appeals holding that the tolling provision didn't apply to the statute of limitations period that governed medical malpractice actions under the Health Care Malpractice Act, Utah Code section 78-14-4 (2002), and remanded the case to the court of appeals to review the trial court's grant of summary judgment. *Arnold v. Grigsby*, 2009 UT 88, ¶¶ 25–26, 225 P.3d 192. The court of appeals reversed summary judgment. *Arnold v. Grigsby*, 2010 UT App 226, ¶ 24, 239 P.3d 294, *aff'd on other grounds*, 2012 UT 61, 289 P.3d 449. Dr. Grigsby again appealed, and we affirmed the court of appeals in part, holding that the facts presented couldn't establish as a matter of law that her claim was barred by the statute of limitations, and remanded the case to the trial court "so that a jury [could] determine whether Ms. Arnold filed her claim more than two years after she discovered, or should have discovered, her legal injury." *Arnold v. Grigsby*, 2012 UT 61, ¶ 32, 289 P.3d 449.

¶7 Upon remand to the trial court, Ms. Arnold filed a motion for summary judgment, which the court granted in part: finding that Ms. Arnold didn't actually know of her legal injury two-years prior to the date she filed her complaint; and denied in part: finding that a genuine issue of material fact remained as to whether Ms. Arnold should have discovered her legal injury through reasonable diligence more than two years prior to filing her claim. After several hearings on the admissibility of evidence, the remaining issue was tried to a jury in November 2015. After both sides had presented their evidence to the jury, Ms. Arnold moved for a directed verdict on the grounds that the evidence admitted at trial established as a matter of law that the court should find in her favor. The trial court denied the motion, finding that "what a reasonable person should have known" according to the evidence "is always a jury question." The issue of whether Ms. Arnold should have known of her legal injury then went to the jury for deliberation, and the jury returned a unanimous verdict in favor of Dr. Grigsby. We have jurisdiction under Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶8 Summary judgment is only appropriate "if the moving party shows that there is no genuine dispute as to any material fact

and the moving party is entitled to judgment as a matter of law." UTAH R CIV. P. 56(a);[1] *see also Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 ("An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness . . . ." (citation omitted) (internal quotation marks omitted)). "We do not review on appeal, however, whether a dispute of material fact existed at the summary judgment stage of a litigation if the trial court denies summary judgment." *Kerr v. City of Salt Lake*, 2013 UT 75, ¶ 29, 322 P.3d 669 (citations omitted).

¶9 With regard to the admission of evidence, most decisions involve a threshold statement of the legal principle governing admission or exclusion, findings of facts pertinent to a determination, and the application of the legal principle to the facts at hand with regard to admissibility. "We review the legal questions to make the determination of admissibility for correctness. We review the questions of fact for clear error. Finally, we review the [trial] court's ruling on admissibility for abuse of discretion." *State v. Workman*, 2005 UT 66, ¶ 10, 122 P.3d 639 (citations omitted).

¶10 A directed verdict is only appropriate "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." UTAH R. CIV. P. 50(a)(1).[2] This court reviews trial court rulings on motions for directed verdict for correctness. *State v. Gonzalez*, 2015 UT 10, ¶ 21, 345 P.3d 1168 ("We review a trial court's ruling on a motion for directed verdict for correctness." (citation omitted)).

¶11 "A trial court's ruling concerning a jury instruction is reviewed for correctness," without deference to its interpretation of

---

[1] The 2015 amendments to Utah Rule of Civil Procedure 56 weren't meant to make any substantive changes to Utah law. UTAH R. CIV. P. 56 advisory committee notes (2015). Thus, we cite to the current version of this rule regardless of when the ruling on summary judgment was made.

[2] Effective May 2016, rule 50 was amended to change the term "directed verdict" to "judgment as a matter of law" along with other clarifying language. The advisory committee notes that "[i]t effects no change in the existing standard." UTAH R. CIV. P. 50 advisory committee notes (2016) (citation omitted). Accordingly, we cite to the current version of rule 50.

the law. *Butler v. Naylor*, 1999 UT 85, ¶ 10, 983 P.2d 41 (citation omitted). "A new trial will not be granted unless any error of the trial court was prejudicial, meaning that it misadvised or misled the jury on the law." *Id.* (citation omitted).

## ANALYSIS

¶12 The statute of limitations on a medical malpractice suit is tolled by the discovery rule until it's time-barred by the four-year statute of repose. "A malpractice action against a health care provider shall be commenced within two years after the plaintiff or patient discovers, or through the use of reasonable diligence should have discovered[,] the injury, whichever first occurs . . . ." UTAH CODE § 78B-3-404(1).[3]

¶13 The focal issue in this appeal is whether the jury's determination that Ms. Arnold's malpractice action was time-barred is sustainable. It is. To this end, we first describe why it would be inappropriate for us to review the trial court's denial of Ms. Arnold's motion for summary judgment. Next, we explain why the trial court acted within its discretion in admitting certain evidence to which Ms. Arnold objected and excluding other evidence Ms. Arnold proffered. We then conclude that the trial court was correct to deny Ms. Arnold's motion for directed verdict. Finally, we determine that none of the jury instructions Ms. Arnold objects to are misleading.

## I. MOTION FOR SUMMARY JUDGMENT

¶14 Ms. Arnold first argues that the trial court erred when it denied her motion for summary judgment. In support of this argument, Ms. Arnold attempts to press into service a Utah Supreme Court decision from an earlier phase of her case: *Arnold v. Grigsby*, 2012 UT 61, 289 P.3d 449 (*Arnold IV*). In *Arnold IV*, she argues, we already decided that the same basic evidence

---

[3] The statute in force at the time of the malpractice suit was Utah Code section 78-14-4 (1979) ("No malpractice action against a health care provider may be brought unless it is commenced within two years after the plaintiff or patient discovers, or through the use of reasonable diligence should have discovered[,] the injury, whichever first occurs, but not to exceed four years after the date of the alleged act, omission, neglect or occurrence . . . ."). As there are no pertinent changes to the language of the statute that would affect the outcome of this case, we cite to the current version that was amended and codified in 2012.

Dr. Grigsby later put before the jury was insufficient, as a matter of law, to establish that Ms. Arnold should have made the discovery that her medical complications resulted from negligence more than two years before she filed her lawsuit. We disagree.

¶15 This summary judgment decision is not reviewable. "We do not review on appeal ... whether a dispute of material fact existed at the summary judgment stage of a litigation if the trial court denies summary judgment." *Kerr v. City of Salt Lake*, 2013 UT 75, ¶ 29, 322 P.3d 669 (citation omitted). A denial of summary judgment is reviewable following a trial only if it's based on a purely legal question or on undisputed facts. *Normandeau v. Hanson Equip., Inc.*, 2009 UT 44, ¶ 15, 215 P.3d 152 ("[W]hen a court denies a motion for summary judgment on a purely legal basis, that is where the court denies the motion based on the undisputed facts, rather than because of the existence of a disputed material fact, the party denied summary judgment may challenge that denial on appeal."); *see also id.* ¶ 11 ("Although some jurisdictions have chosen to implement [a] bright line rule, others recognize that [a] critical distinction exists between summary judgment motions raising the sufficiency of the evidence to create a fact question for the jury and those raising a question of law that the court must decide." (second alteration in original) (citations omitted) (internal quotation marks omitted)); *Kerr*, 2013 UT 75, ¶ 11 ("We review for correctness a trial court's denial of summary judgment when the court bases its ruling on a purely legal determination." (citation omitted)). Here, the trial court expressly denied Ms. Arnold's motion based on the existence of disputed facts. We therefore decline to review the trial court's summary judgment decision.

¶16 Further, to the extent Ms. Arnold is arguing that *Arnold IV* required the trial court to award her summary judgment as a matter of law, we reject this reading. In *Arnold IV*, this court upheld the court of appeals' decision to reverse an award of summary judgment to Dr. Grigsby. We held that a reasonable jury confronted with the facts Dr. Grigsby adduced in support of his motion for summary judgment—"the existence of symptoms," "a suspicion that a doctor's negligence caused medical complications," and "the commencement of an investigation"—still could have concluded that Ms. Arnold neither knew nor should have known of her injury, and we specifically remanded for a jury trial on these issues. *Arnold IV*, 2012 UT 61, ¶¶ 15, 33.

¶17 Relying on snippets from *Arnold IV*, Ms. Arnold invites us to convert it from a decision reversing the trial court's award of summary judgment to Dr. Grigsby into a decision awarding her

summary judgment. In support of this invitation, she notes that, at times, *Arnold IV* explains its decision to reverse summary judgment to Dr. Grigsby by stating that the evidence before the court on summary judgment was "insufficient to establish" that Ms. Arnold knew or should have known she had a cause of action against Dr. Grigsby more than two years before she filed suit.

¶18 We decline this invitation. "[A] denial of summary judgment is not a decision on the merits; it simply is a decision that there is a material factual issue to be tried." 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2712 (4th ed. 2017). When *Arnold IV* spoke of the "insufficiency" of Dr. Grigsby's evidence, it meant that the evidence on the record was insufficient to establish *as a matter of law* that Ms. Arnold knew or should have known that Dr. Grigsby's negligence had caused her injury more than two years before she filed suit. *Arnold IV*, 2012 UT 61, ¶ 33 ("Dr. Grigsby failed to show, as a matter of law, that Ms. Arnold filed her claim more than two years after she discovered her legal injury."). But we didn't reach this holding because no reasonable jury could have concluded otherwise based on the specific facts of Dr. Grigsby's case. Rather, we held "that material issues of fact in this case render[ed] the [trial] court's grant of summary judgment inappropriate[,] . . . and we remand[ed] for the jury to determine" the outcome. *Id.* In denying the grant of summary judgment, we decided only that the case should go to trial, not that Dr. Grigsby should lose. And "[l]itigants must be able to present their cases fully to the court before judgment can be rendered against them unless it is obvious from the evidence before the court that the party opposing judgment can establish no right to recovery." *Mountain States Tel. & Tel. Co. v. Atkin, Wright & Miles, Chartered*, 681 P.2d 1258, 1261 (Utah 1984) (citation omitted).

## II. EVIDENTIARY DECISIONS

¶19 Ms. Arnold asserts that the trial court erred in admitting improper hearsay evidence and excluding other evidence that would have been favorable to her case. We hold that the trial court correctly determined the law with regard to its evidentiary decisions, that there was no clear error in its factual findings, and that it didn't abuse its discretion in its evidentiary rulings. Therefore, these rulings do not constitute reversible error.

### *A. Hearsay*

¶20 Hearsay, as defined in Utah Rule of Evidence 801(c), is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to

prove the truth of the matter asserted in the statement."[4] Sometimes, "statements that appear on the surface to be hearsay . . . are not. . . . Accordingly, if an out of court statement is offered for some other purpose—e.g., to [show its effect of the hearer's state of mind] and not for its truth—it is not hearsay." *Prosper, Inc. v. Dep't of Workforce Servs.*, 2007 UT App 281, ¶ 12, 168 P.3d 344. "Hearsay is not admissible except as provided by law or by these rules." UTAH R. EVID. 802. There are several exceptions to the hearsay rule outlined in rules 803–807.

¶21 "Our standard of review on the admissibility of hearsay evidence . . . 'often contains a number of rulings, each of which may require a different standard of review.'" *State v. Workman*, 2005 UT 66, ¶ 10, 122 P.3d 639 (citation omitted). "We review the legal questions to make the determination of admissibility for correctness. We review the questions of fact for clear error. Finally, we review the district court's ruling on admissibility for abuse of discretion." *Id.* (citations omitted).

1. Husband's Recollection of Unknown Nurse's Statement

¶22 While at UBMC, an unidentified nurse warned Mr. Arnold that he needed to get Ms. Arnold out of UBMC "or she was going to die." Ms. Arnold argues that the statement was inadmissible hearsay. On the other hand, Dr. Grigsby argues that the statement is admissible because it directly led Mr. Arnold to request Ms. Arnold's transfer to another hospital. The trial court concluded that the statement wasn't hearsay because it was "offered to show the effect on Mr. Arnold, the hearer, rather than for the truth of the matters asserted in the statement." The court was correct. *See State v. Hutchison*, 655 P.2d 635, 636 (Utah 1982) ("When an out-of-court statement is offered only to prove that the statement was made, without regard to its truth or falsity, it is not proscribed by the hearsay rule." (citations omitted)). Also, because it wasn't offered to establish the truth of Ms. Arnold's actual risk of death or the deficiency of medical care, the qualifications of the nurse to make a medical assessment were irrelevant.

¶23 The trial court also determined that sufficient foundation was laid under Utah Rule of Evidence 602 and that Utah Rule of

---

[4] The Utah Rules of Evidence regarding hearsay haven't changed in substance since their inception. Any changes made were to the style and renumbering. As such, we quote the current version of the rules regarding hearsay.

Evidence 403 didn't require exclusion of this evidence. Mr. Arnold himself was able to establish sufficient foundation under rule 602 because he personally participated in the conversation. Moreover, the probative value of the statement wasn't substantially outweighed by its prejudicial effect. The fact that Mr. Arnold ultimately gave testimony at trial that he never communicated this statement to Ms. Arnold does not undermine the trial court's conclusion, but strengthens it. On appeal, Dr. Grigsby admits that the nurse's statement "provided no basis for [Ms. Arnold] discovering her injury." Both parties agree that the nurse's statement was not communicated to Ms. Arnold, so it wasn't prejudicial to her. And the statement had probative value. It was given to the jury not to prove what the nurse told him was actually true or whether Ms. Arnold knew of the nurse's statement, but to show its effect on Mr. Arnold and present to the jury a possible reason for the desire to move Ms. Arnold to St. Mark's Hospital. We hold that the trial court correctly interpreted the relevant legal issues and didn't abuse its discretion in admitting the nurse's statement.

2. Nurse's Document

¶24 Conversely, the "sticky note" on the eight-page pharmacy document is hearsay because it's being offered to prove the truth of the matter asserted—that Ms. Arnold had consulted an attorney and was considering a lawsuit. To be admissible, then, it must fall within one of the hearsay exceptions. Further, each statement on the sticky note may also be hearsay because they weren't "transmitted by . . . someone with knowledge" as to their truthfulness, and so must comply with Utah Rule of Evidence 805: "Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." We first determine whether the sticky note is admissible under the business records exception and then determine which, if any, statements also qualify for admissibility.

¶25 The trial court correctly concluded that a portion of the sticky note was permissible under rule 803(6), "Records of a Regularly Conducted Activity," also known as the business records exception. To be admissible under the business records exception, "[a] record of an act, event, condition, opinion, or diagnosis" must meet the following requirements:

(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business . . . ;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian . . . ; and

(E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

UTAH R. EVID. 803(6). Ms. Vernieuw, the home healthcare nurse, testified that she handwrote the sticky note to explain the changes made to the standard form.[5] She then gave the paperwork to the pharmacy, which was scanned into the pharmacy's electronic records within days of the visit. Thus, "the record was made at or near the time by — or from information transmitted by — someone with knowledge." *Id.* 803(6)(A). Ms. Vernieuw also testified that the "papers belong[ed] to the pharmacy" for which she worked and that they were completed "in the ordinary course of . . . rendering services," satisfying rule 803(6)(B)–(D). The trial court didn't abuse its discretion in finding that the source of information, the method, or the circumstances were trustworthy.

¶26 After finding that the sticky note qualified under the business records exception, the trial court analyzed the note as

_____

[5] Ms. Arnold argues that the nurse, Ms. Vernieuw, shouldn't have been allowed to testify because her testimony was unduly prejudicial, outweighing its probative value. *See* UTAH R. EVID. 403. We disagree that the trial court abused its discretion in allowing Ms. Vernieuw to testify. Far from it. The note was highly probative of key issues: Ms. Arnold's understanding that she had a malpractice claim and when she came to hold that view. *See State v. Hamilton*, 827 P.2d 232, 239–40 (Utah 1992) ("In reviewing a trial court's ruling on the admissibility of evidence under rule 403, we will not overturn the court's determination unless it was an abuse of discretion. To state the matter more precisely, we review the trial court's 403 ruling admitting or denying admission to evidence by deciding whether, as a matter of law, the trial court's decision that the unfairly prejudicial potential of the evidence outweighs [or does not outweigh] its probativeness was beyond the limits of reasonability." (alteration in original) (citations omitted) (internal quotation marks omitted)).

hearsay within hearsay. There are four separate independent clauses that the trial court analyzed individually for admissibility under a hearsay exception: (1) "Client has been told by her lawyer, not to sign any papers indicating she'll pay"; (2) "therefore she crossed out those sections or would not sign them"; (3) "Apparently she's preparing a suit for problems in beginning of illness"; and (4) "After billing any expense after insurance pays, you may need to go through her lawyer for pay." This note was signed "Denice."

¶27 The trial court determined that the first clause, "Client has been told by her lawyer, not to sign any papers indicating she'll pay," was admissible under rule 803(3). This rule allows hearsay statements that demonstrate "the declarant's then-existing state of mind (such as motive, intent, or plan)." *Id.* 803(3). There was no abuse of discretion in admitting this evidence.

¶28 The trial court also correctly concluded that the second clause, "therefore she crossed out those sections or would not sign them" was an "event" as described in rule 803(6), and therefore admissible. The third clause, "Apparently she's preparing a suit for problems in beginning of illness" was originally determined inadmissible hearsay, but was later allowed for jury consideration under rules 801(d)(2)[6] and 803(6) when Ms. Vernieuw was able to provide foundation for the statement in her trial testimony. We therefore don't find any abuse of discretion in the application of the hearsay rules to the facts at hand.

¶29 The fourth clause, "After billing any expense after insurance pays, you may need to go through her lawyer for pay," was deemed to be only the opinion of Ms. Vernieuw, and was therefore stricken and the jury didn't consider it in its deliberations. We give the trial court deference and uphold its ruling.

### B. Exclusion of Evidence

#### 1. Testimony of Dr. White and Dr. Grigsby on Their Negligence

¶30 First, Ms. Arnold argues that the trial court erred in determining that testimony by Dr. White and Dr. Grigsby about whether they believed they had been negligent was irrelevant. While relevant evidence is generally admissible, irrelevant evidence isn't. UTAH R. EVID. 402. "Evidence is relevant if . . . it has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." UTAH R. EVID. 401. We have said

---

[6] Utah Rule of Evidence 801(d)(2) defines statements of an opposing party to not be hearsay if it meets certain conditions.

that "[t]rial courts have wide latitude in making determinations of relevance, probativeness, and prejudice." *Diversified Holdings, L.C. v. Turner*, 2002 UT 129, ¶ 38, 63 P.3d 686 (alteration in original) (citation omitted).

¶31 Accordingly, we conclude there was no abuse of discretion in the trial court allowing testimony from Dr. White and Dr. Grigsby regarding what they communicated to Ms. Arnold with respect to their standard of care and not allowing their personal opinions regarding their care. The purpose of this trial wasn't to determine whether the doctors breached a standard of care, but whether Ms. Arnold should have known about her legal injury within the specified timeframe. The court decided that the doctors' personal beliefs about their standard of care were irrelevant to a determination of when the statute of limitations began to run. We agree.

2. Mr. Hintze's Expert Testimony

¶32 Second, Ms. Arnold contends that the trial court erred in prohibiting Mr. Hintze from testifying about the general steps an attorney takes in a malpractice case. The trial court ruled that Mr. Hintze could testify about his own actions and motivations, but hadn't been qualified as an expert witness and therefore couldn't establish what an attorney's standard of care would be in this type of case or what a reasonable attorney would do when litigating a case similar to Ms. Arnold's. We find no abuse of discretion in the court's application of the evidentiary rule regarding expert witnesses to Mr. Hintze. *See* UTAH R. EVID. 702.

III. DIRECTED VERDICT

¶33 A directed verdict wasn't warranted here. The issue of when Ms. Arnold knew of her legal injury is a question of fact, but the applicability of the discovery rule to the statute of limitations—whether she should have known about her legal injury—is a mixed question of law and fact. *See In re Adoption of Baby B*, 2012 UT 35, ¶¶ 51–52, 308 P.3d 382; *Colosimo v. Roman Catholic Bishop of Salt Lake City*, 2007 UT 25, ¶ 11, 156 P.3d 806; *see also State v. Pena*, 869 P.2d 932, 935 (Utah 1994) ("Factual questions are generally regarded as entailing the empirical, such as things, events, actions, or conditions happening, existing, or taking place, as well as the subjective, such as state of mind. Legal determinations, on the other hand, are defined as those which are not of fact but are essentially of rules or principles uniformly applied to persons of similar qualities and status in similar circumstances." (citations omitted)), *abrogated on*

*other grounds by USA Power, LLC, v. PacifiCorp*, 2016 UT 20, 372 P.3d 629.

¶34 "Trial courts are given primary responsibility for making determinations of fact." *Pena*, 869 P.2d at 935. In this case, the trial court determined that Dr. Grigsby had presented enough evidence at trial to give "a reasonable jury . . . a legally sufficient evidentiary basis to find" that Ms. Arnold should have discovered her injury more than two years before filing her complaint. UTAH R. CIV. P. 50(a)(1). "When a party challenges a trial court's denial of a motion for directed verdict . . . on the basis of insufficiency of evidence, . . . [w]e reverse only if, viewing the evidence in the light most favorable to the prevailing party, we conclude that the evidence is insufficient to support the verdict." *Brewer v. Denver & Rio Grande W. R.R.*, 2001 UT 77, ¶ 33, 31 P.3d 557 (citations omitted) (internal quotation marks omitted).

¶35 Indeed, when the question, as here, is whether a jury should be allowed to decide whether the overall syndrome of evidence before it establishes that a plaintiff's medical malpractice suit is time-barred, we look to whether the *particular evidence* before the jury could support such a verdict. For example, in *Collins v. Wilson*, we upheld a jury's verdict because the evidence before it—notably, evidence that the plaintiff suspected that a doctor acted negligently and evidence that the plaintiff's expectations about how long he'd have to stay in the hospital were "dashed soon after the surgery" (and over two years before the plaintiff filed suit)—could license a jury's inference that the plaintiff's suit was time-barred. 1999 UT 56, ¶ 18, 984 P.2d 960. The mode of analysis in *Collins* unambiguously comports with the mode of analysis in *Arnold IV*, where this court emphasized that a similar syndrome of evidence could *also* be interpreted as giving rise only to a "mere suspicion."

¶36 And this distinction makes sense. We trust, and it will typically be the province of, a jury to parse the whole scheme of individualized evidence before it to reach a just result regarding whether a plaintiff in a medical malpractice action should have known of a cause of action more than two years before filing suit. It's not the prerogative of either the trial court or the appellate courts to "weigh evidence or assess credibility." *Mountain States Tel. & Tel. Co. v. Atkin, Wright & Miles, Chartered*, 681 P.2d 1258, 1261 (Utah 1984) (citation omitted); *see also Bailey v. Bayles*, 2002 UT 58, ¶ 19, 52 P.3d 1158 ("It is inappropriate for an appellate court . . . to assume the role[s] of weighing evidence and making its own findings of fact." (citations omitted)).

¶37 Although the evidence presented to the trial court in this case wasn't sufficient to sustain *as a matter of law* a summary judgment for either party, it was sufficient to present to the jury to weigh the evidence and make determinations of disputed material facts; therefore the trial court correctly decided a directed verdict was inappropriate and the jury's verdict stands. Moreover, the evidence before the jury was more than enough for a reasonable jury to find in favor of Dr. Grigsby. As in *Collins*, the jury heard that Ms. Arnold's expectations about the complications she would suffer from her colonoscopy—as well as the length of her stay in the hospital—were repeatedly dashed more than two years before she filed suit. First, she was told that it was a routine procedure and that she was fine to be discharged. Then, a complication arose, she entered the hospital for another stay, and she was again told she was cured. And then yet another complication arose. She went back in for another hospital stay. She was told she was "clean as a whistle." Not ten days later, she required emergency life-saving surgery that resulted in a colostomy.

¶38 And, also like the plaintiff in *Collins*, Ms. Arnold suspected that her doctors had acted negligently well over two years before she filed suit—going so far as to refuse to sign any paperwork because she planned to sue. The home healthcare nurse assigned to her case noted on the paperwork that Ms. Arnold "has been told by her lawyer not to sign any papers indicating she'll pay. . . . Apparently she's preparing a suit for problems in the beginning of the illness." This evidence informs the significance a reasonable jury might have ascribed to the troublesome course of Ms. Arnold's treatment—it reflects that her experience of the objectively suspicious treatment she received had been of such a nature as to put her on the alert that her complications might well have been caused by her doctors' negligence. This accumulated evidence could have led a jury to believe that she had been put on alert of all the facts necessary to lead an ordinary person using reasonable diligence to conclude that a claim for negligence may exist.

¶39 In short, a reasonable jury, when confronted with these pieces of evidence, could have inferred that Ms. Arnold should have known that her injury was attributable to negligence over two years before she initiated her medical malpractice action. Thus, it would have been inappropriate for the judge to "weigh [the] evidence or assess [the] credibility," which would have effectively usurped the jury's role. *Mountain States Tel. & Tel. Co.*, 681 P.2d at 1261. The trial court correctly denied her motion for directed verdict.

## IV. JURY INSTRUCTIONS

¶40  Ms. Arnold claims that the trial court abused its discretion in issuing the jury instructions. A trial court abuses its discretion when it "relie[s] on an erroneous conclusion of law." *USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 75, 372 P.3d 629 (citation omitted) (internal quotation marks omitted). When determining whether a set of jury instructions sufficiently inform the jury, "we look at the jury instructions in their entirety and will affirm when the instructions taken as a whole fairly instruct the jury on the law applicable to the case." *Id.* (citation omitted) (internal quotation marks omitted). This means that "a trial court does not err by refusing a proposed instruction if the point is properly covered in other instructions." *Id.* (citation omitted) (internal quotation marks omitted).

¶41 Ms. Arnold's claims that the jury instructions were an abuse of discretion are unsubstantiated. Ms. Arnold attempts to show the insufficiency of the jury instructions by evaluating each instruction separately, challenging the specific language in each instruction rather than looking at them as a coherent set of instructions. But taken as a whole, the jury instructions correctly stated the law. In fact, the language in the instructions she challenges are direct quotes from our opinion in *Arnold IV*. Because of this, our "confidence in the jury's verdict is [not] undermined" as the instructions sufficiently informed the jury regarding to the applicable law. *Turner v. Univ. of Utah Hosps. & Clinics*, 2013 UT 52, ¶ 17, 310 P.3d 1212 (citation omitted). Thus, the trial court didn't abuse its discretion with regard to the jury instructions.

## CONCLUSION

¶42  We hold that there were material facts in dispute and that a jury could permissibly find for Dr. Grigsby based on the evidence before it. Therefore summary judgment and directed verdict were unwarranted. We further hold that it wasn't an abuse of discretion for the court to admit Ms. Arnold's husband's testimony and the nurse's report. The trial court didn't err in excluding the evidence Ms. Arnold asserts should have been admitted. Finally, we conclude that read as a whole, the jury instructions in this case correctly stated the law of the case. We affirm the trial court and we dismiss the cross-appeal as moot.